OPINION OF THE COURT
 

 Rosenblatt, J.
 

 After plaintiff obtained a four million dollar default judgment against defendant truck driver in this personal injury action, Supreme Court granted the nonparty insurance carrier’s motion to vacate the judgment. The Appellate Division affirmed, and on this appeal we consider whether the vacatur was proper.
 

 I.
 

 On February 2, 1990, four-year-old Zachary Woodson was walking along First Avenue in Manhattan with his mother, Tracy Woodson. At the time, Mbaye Thiam was driving his livery cab when he suddenly collided with a truck driven by John Densby, and then careened onto the sidewalk, hitting Zachary. On Zachary’s behalf and derivatively, Tracy Woodson sued Thiam and Densby, along with Mention Leasing Corporation as the truck owner, seeking to recover damages for Zachary’s injuries (Action No. 1). In her verified complaint, she
 
 *65
 
 alleged that Thiam’s and Densby’s vehicles “came into contact, with another, propelling one of these two vehicles into pedestrian, zachary woodson.” Plaintiff asserted that Thiam and Densby were both negligent in their failure to operate their vehicles safely.
 

 Although Thiam and Mendon answered the complaint, Densby did not and plaintiff moved for a default judgment against him. In support of the motion, plaintiff submitted her attorney’s affirmation, the summons and complaint, as well as Hendon’s and Thiam’s answers. Densby opposed the motion, claiming he was not served properly. He also submitted an affidavit denying any wrongdoing but admitting that his truck had come into contact with Thiam’s cab. Specifically, he stated that as he was driving his truck, “a car that was on my right side[] cut in front of the truck * * * [and] tipped my truck’s front bumper with [its] rear bumper at which time the car lost control. The car drove across onto the sidewalk * * * knocking down the people that were there,” including a “young child.” After conducting a traverse hearing and concluding that Densby had been properly served, the court on September 14, 1992 granted plaintiff’s default motion, without any opposition from Densby. The court also ordered an inquest and severed the action against Thiam and Mendon.
 

 Densby did not appear at the inquest. Plaintiff described the accident in general terms, stating that she “heard this screeching sound and the next thing I noticed was just the car jump— coming straight towards us, a big car and that was it.” All she could remember was “just seeing the car come off the sidewalk and I’m saying, oh, my God, and that was it. I felt after that— after that, I felt just being pushed back.” Thus, plaintiff saw the car hit Zachary and pin him against the ground. This is undisputed.
 

 On March 3, 1995, Supreme Court entered a final judgment in plaintiff’s favor against Densby for $4,172,705.63.
 
 [1]
 
 Densby appealed, arguing that he was not notified of the inquest and that the damages were excessive. The Appellate Division rejected his arguments and affirmed the judgment
 
 (see Wood-son v Mendon Leasing Corp.,
 
 232 AD2d 291 [1996]).
 

 
 *66
 
 On March 4, 1996, as a judgment creditor and pursuant to section 3420 (a) (2) of the Insurance Law, plaintiff sued Men-don’s primary liability carrier, American Transit Insurance Company (ATIC) (Action No. 2). She alleged that under its policy with Mendon, ATIC was obligated to pay the amount of the judgment based on Mendon’s ownership of the truck Densby had driven. Ultimately, ATIC paid plaintiff $2,916,715.42 in full satisfaction of its liability under the policy and in partial satisfaction of the judgment. The bulk of the money was placed in court-controlled bank accounts held for Zachary’s benefit during his minority.
 

 Thereafter, Supreme Court appointed plaintiff to be Densby’s receiver with respect to any claims Densby may have had in connection with Action No. 1. Pursuing the full amount of the judgment, in March 1998 plaintiff sued ATIC and the lawyers appointed to represent Densby in Action No. 1, alleging they were negligent in their defense and representation (Action No. 3). It was their negligence, plaintiff alleged, that resulted in the $4,172,705.63 judgment.
 

 Plaintiffs deposition in Action No. 3 formed the basis of the appeal before us. In that deposition, plaintiff testified, “I just heard the sound, a screeching sound, and the next thing I knew the car was on top of both of us — well, on top of my son and me pinned up against the fence.” She further testified that although she knew a livery cab had hit them, she was not certain what caused the screeching sound, what caused the livery cab to drive onto the sidewalk or whether there was a truck nearby.
 

 About six months after plaintiffs deposition, ATIC moved pursuant to CPLR 5015 (a) (3) for an order vacating the $4,172,705.63 judgment. It based its claim on what it asserted were newly revealed inconsistencies in plaintiffs account of the accident, and contended that these inconsistencies proved that the judgment was procured through “fraud, misrepresentation, or other misconduct.” ATIC also sought $2,916,715.42 in restitution.
 

 Specifically, ATIC argued that, on the one hand, plaintiff swore in her verified complaint in Action No. 1 that Densby operated his vehicle negligently, while in her deposition testimony in Action No. 3 she stated she was not certain how the accident occurred or whether a truck was involved. Moreover, ATIC argued that in the Action No. 3 complaint plaintiff alleged that counsel for ATIC was to blame for the default judgment, and thus contradicted her allegations in Action No.
 
 *67
 
 1 that the default judgment was a consequence of Densby’s negligent driving. In short, ATIC claimed that these subsequent revelations showed that plaintiffs allegations in Action No. 1 were “baseless” and, as such, that the default judgment plaintiff obtained in reliance on those allegations should be vacated pursuant to the fraud, misrepresentation or misconduct provision of CPLR 5015 (a) (3). In response to ATIC’s motion, plaintiff submitted an affidavit stating that she based her complaint in Action No. 1 on her personal observations at the scene and on the police report.
 

 On March 16, 2001, about 10 years after Densby’s default, Supreme Court granted ATIC’s motion and vacated the default judgment
 
 “to promote the interests of justice and fairness.”
 
 (Emphasis added.) The court noted that the central issue before it was “the dichotomy between the verified allegations in the respective complaints and [plaintiffs] testimony” and expressed concern that plaintiff may have been “signing documents either without reading them, or without having them adequately explained.” The court, however, never made an express finding that plaintiff had committed fraud, misrepresentation or other misconduct.
 

 The Appellate Division affirmed the vacatur. Like Supreme Court, the Appellate Division did not cite CPLR 5015 (a) (3) or otherwise conclude that there was any fraud, misrepresentation or misconduct on plaintiffs part. It held, however, that “[a] complaint not verified by a person with personal knowledge of the substantive facts is pure hearsay with no evidentiary value, and the entry of a judgment based on such a complaint must be deemed a nullity” (289 AD2d 158, 159 [2001]). The Court stated that a plaintiff seeking a default judgment is required to provide “some firsthand confirmation of the facts” (id., quoting
 
 Feffer v Malpeso,
 
 210 AD2d 60, 61 [1994]). In the Court’s view, plaintiffs allegations did not meet that standard, given her subsequent deposition testimony and verified complaint.
 

 The Appellate Division granted plaintiffs motion for leave to appeal and certified the following question: “Were the orders of the Supreme Court, as affirmed by this Court, properly made?”
 
 [2]
 
 For the reasons that follow, we answer the certified question in the negative.
 

 
 *68
 
 II.
 

 A.
 

 Under CPLR 5015 (a), a court is empowered to vacate a default judgment for several reasons, including excusable neglect; newly-discovered evidence; fraud, misrepresentation or other misconduct by an adverse party; lack of jurisdiction; or upon the reversal, modification or vacatur of a prior order. These categories represent a codification of the principal grounds upon which courts have traditionally vacated default judgments as part of their “inherent discretionary power”
 
 (see
 
 Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5015:ll, at 476 [1992]). It thus follows that section 5015 (a) does not provide an exhaustive list as to when a default judgment may be vacated. Indeed, the drafters of that provision intended that courts retain and exercise their inherent discretionary power in situations that warranted vacatur but which the drafters could not easily foresee
 
 (see id.;
 
 3d Preliminary Report of Advisory Comm on Practice and Procedure, 1959 NY Legis Doc No. 17, at 204).
 

 In addition to the grounds set forth in section 5015 (a), a court may vacate its own judgment for sufficient reason and in the interests of substantial justice
 
 (see Ladd v Stevenson,
 
 112 NY 325, 332 [1889];
 
 see generally
 
 10 Weinstein-Korn-Miller, NY Civ Prac j] 5015.01, at 50-299; 1] 5015.12, at 50-338 [2002]). As one commentator has noted, “It might have been more elegant to add an additional paragraph [to CPLR 5015 (a)] as a kind of catchall category, * * * but the intent seems clear enough without it” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5015:ll, at 476-477). In either case, a court’s decision to vacate a default judgment will be reviewed on appeal for an abuse of discretion
 
 (see eg. Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co.,
 
 67 NY2d 138, 143 [1986];
 
 see also
 
 10 Weinstein-Korn-Miller, NY Civ Prac 5015.03, at 50-301).
 
 [3]
 

 B.
 

 ATIC moved to vacate the default judgment pursuant to CPLR 5015 (a) (3) (involving fraud, misrepresentation or other misconduct). Supreme Court’s vacatur was imprecise enough to create a dispute between the parties as to the basis for the
 
 *69
 
 court’s decision. Plaintiff argues that by vacating the judgment “to promote the interests of justice and fairness” Supreme Court made no finding of fraud, misrepresentation or misconduct (and points out that the Appellate Division made no such finding or any reference to CPLR 5015 [a] [3]). ATIC, however, argues that Supreme Court’s decision should be read as finding that plaintiff was guilty of fraud, misrepresentation or misconduct.
 

 Regardless of whether we accept plaintiffs or ATIC’s interpretation of the decision, we conclude that Supreme Court abused its discretion in vacating the default judgment. If (as ATIC argues) Supreme Court’s decision is read as having found that plaintiff was guilty of fraud, misrepresentation or misconduct and setting aside the default judgment on that basis, we hold that the court abused its discretion because the record does not support any such conclusion. On the other hand, if (as plaintiff argues) Supreme Court’s decision made no finding of fraud, misrepresentation or misconduct, then the decision appears to have been based on the court’s inherent discretionary power to vacate its own judgments. This also amounted to an abuse of discretion under the facts before us.
 

 In addressing ATIC’s motion, Supreme Court spoke of plaintiff’s “conflicting pleadings” and “almost internally inconsistent affidavit.” In particular, the court stated that in plaintiffs verified complaint in Action No. 1 she swore upon personal knowledge that Densby operated his vehicle negligently, but in her deposition testimony in Action No. 3 she stated that she was unaware of any truck being involved in the accident and did not know what caused the accident. Moreover, plaintiff stated in an affidavit that her knowledge of the accident came from her observations at the scene and from a police report. Based on these statements, Supreme Court concluded that plaintiff “had no real personal knowledge of those allegations in the complaint [for Action No. 1],” and thus vacated the default judgment.
 

 Contrary to Supreme Court’s determination, plaintiff has remained steadfast throughout this litigation in her two most critical assertions: (1) vehicles driven by Thiam and Densby were involved in an accident that resulted in serious injury to her son and (2) both defendants were to blame for the accident, even though their relative fault cannot be established with certainty in the absence of discovery and a trial. Plaintiff never wavered from that theory. In her verified complaint in Action No. 1, she alleged, in part, that “the
 
 defendants
 
 * * * were
 
 *70
 
 negligent * * * [in operating] the vehicles in a fast, reckless and dangerous manner” (emphasis added). Plaintiffs later statements that she did not know the precise cause of the accident and that she did not observe a truck as she was attempting to remove her four-year-old son from underneath a car do not belie her allegations. As she later pointed out, “my only concern [at that moment] was with my son.” Her allegations of negligence as against both drivers came from her personal observations at the scene. She was aware that Densby was involved in the accident based not only on the police report that she read, but on Densby’s own admission that his vehicle had collided with a livery cab that in turn careened into Zachary. Moreover, by blaming ATIC in Action No. 3 for not preventing Densby’s default, plaintiff cannot be taken as having relieved Densby from any role in causing the accident.
 

 The record is clear that plaintiff had personal knowledge of her claim against defendants, even if she could not with absolute certainty ascribe to each defendant a particular level of fault. ATIC is arguing, in essence, that plaintiff never spelled out an adequate claim against Densby. We disagree. Indeed, and most notably, the Appellate Division on this record concluded in a collateral proceeding that “[t]he admission of [Densby] that his vehicle came into contact with [Thiam’s] vehicle prior to the latter striking the infant plaintiff, a pedestrian,
 
 raises an issue of fact as to the relative culpability of both
 
 drivers”
 
 (Woodson v Mendon Leasing Corp.,
 
 292 AD2d 159, 159 [2002] [emphasis added]). In light of our determination that plaintiff was consistent and had personal knowledge of the accident, it also follows that, as a matter of law, ATIC has failed to show that plaintiff procured the default judgment through “fraud, misrepresentation, or other misconduct” (CPLR 5015 [a] [3]).
 

 C.
 

 Having concluded that Supreme Court abused its discretion in vacating the default judgment, we also reject ATIC’s argument that, as an initial matter, plaintiffs submissions in support of her motion for a default judgment were insufficient. CPLR 3215 (f) requires that an applicant for a default judgment file “proof by affidavit made by the party of the facts constituting the claim.” A verified complaint may be submitted instead of the affidavit when the complaint has been properly served
 
 (see
 
 CPLR 3215 [f|). Given that in default proceedings the defendant has failed to appear and the plaintiff does not
 
 *71
 
 have the benefit of discovery, the affidavit or verified complaint need only allege enough facts to enable a court to determine that a viable cause of action exists
 
 (see
 
 7 Weinstein-KornMiller, NY Civ Prac 3215.24, at 32-326). Indeed, defaulters are deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them
 
 (see Rokina Opt. Co. v Camera King,
 
 63 NY2d 728, 730 [1984]).
 

 Here, in granting the default judgment, Supreme Court had before it plaintiff’s verified complaint, attorney affirmation, defendants’ answers and Densby’s affidavit. Taken together, they were sufficient as a matter of law to enable the court to determine that a viable cause of action existed. At the early stages of litigation in cases of this type it would be unreasonable to expect a plaintiff to sort out meticulously the negligent acts assignable to each defendant. We leave for another day the issue of whether noncompliance with CPLR 3215 (f) renders a default judgment a “nullity”
 
 (see Woodson v Mendon Leasing Corp.,
 
 289 AD2d 158, 159 [2001]).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the certified question answered in the negative, and the default judgment entered against John Densby reinstated.
 

 Judges Smith, Ciparick, Wesley, Graffeo and Read concur; Chief Judge Kaye taking no part.
 

 Order reversed, with costs, motion by nonparty movant American Transit Insurance Company to vacate the January 6, 1995 judgment against John Densby denied and certified question answered in the negative.
 

 [1]
 

 . The parties give us slightly different figures. Plaintiff claims the default judgment was for $4,172,785.63. American Transit Insurance Company claims that it was $4,172,706. The Appellate Division stated that the amount was $4,172,705.63 (see
 
 Woodson v Mendon Leasing Corp.,
 
 289 AD2d 158, 158 [2001]). Although the Supreme Court order appears to support plaintiff’s figure, in this opinion we use the Appellate Division’s figure for purposes of consistency only.
 

 [2]
 

 . ATIC subsequently moved this Court to dismiss the appeal. That motion was denied (see
 
 Woodson v Mendon Leasing Corp.,
 
 98 NY2d 691 [2002]).
 

 [3]
 

 . CPLR 317 provides another basis for vacating a default judgment based on improper service.