[872 NYS2d 128]

Octavio Ramos, Respondent, v City of New York et al.,
Defendants, and Jake Realty LLC et al., Appellants.

First Department, February 5, 2009

**APPEARANCES OF COUNSEL**

*London Fischer LLP*, New York City (*Michael J. Carro, James Walsh* and *Miriam B. Schneider* of counsel), for appellants.

*Beekman & Kaufman, LLP*, Roslyn Heights (*Jonathan D. Beekman* and *Stephanie J. Kaufman* of counsel), for respondent.

**OPINION OF THE COURT**

ACOSTA, J.

This action arises out of an altercation between plaintiff Octavio Ramos, the president of the tenants' association of an apartment building in Manhattan, and defendant Victor Casanova, the superintendent of the building. Specifically, according to plaintiff, Casanova and defendant Neil Gewirtz, the managing agent for the building, contacted the police and falsely accused plaintiff of having threatened and physically struck Casanova. As a result, plaintiff was arrested and subsequently convicted on January 21, 2000 of second-degree harassment and resisting arrest. In 1999, prior to his conviction, plaintiff commenced this action against, among others, Casanova, Gewirtz, the building, the building's management company (the building defendants), the arresting police officers, and the City of New York, asserting claims for false arrest, malicious prosecution, assault and battery, and violation of 42 USC § 1983. In September 2003, the building defendants moved for summary judgment dismissing the complaint, arguing, in part, that plaintiff's criminal conviction established probable cause for his arrest, thus rendering his civil claims unviable as a matter of law. Plaintiff's counsel did not submit any opposition to the building defendants' motion, did not inform the court that plaintiff had ap-

pealed his criminal conviction, and did not even advise plaintiff of defendants' motion.

By order dated October 28, 2003, Justice Michael D. Stallman granted defendants' motion in full, stating that plaintiff's "criminal conviction both establishes probable cause to arrest and collaterally estops [him] from litigat[ing] . . . the occurrence," and that he failed to "come forward with any evidence that would create a triable question of fact." Thus, although plaintiff did not oppose the motion, the court dismissed the complaint on the merits and did not render a default judgment against plaintiff. On February 17, 2004 a judgment dismissing the complaint as against all defendants was entered.

Shortly after, by order dated April 12, 2004, Appellate Term reversed the conviction and dismissed the accusatory instrument against plaintiff (*People v Ramos*, 3 Misc 3d 127[A], 2004 NY Slip Op 50324[U] [2004]). Appellate Term found that the harassment conviction was "against the weight of the evidence," which showed, at most, "incidental physical contact" in the midst of a "rapidly escalating, housing-related dispute," and that the resisting arrest conviction was "infirm" because there was no reasonable cause to arrest "on a violation harassment charge involving events which took place outside the presence of the arresting officer" (*id.* at *2).

Plaintiff, more than ever convinced that he was entitled to be compensated for the injuries inflicted upon him by defendants' false accusations, retained new counsel, who in or about March 2005 instituted a new action in all presently pertinent respects identical to the first action dismissed by Justice Stallman. The defendants in this second action moved to consolidate it with a third action that plaintiff, acting pro se, had commenced against Casanova. By order dated August 30, 2006, Justice Louis B. York denied consolidation and dismissed the second action on the basis of Justice Stallman's prior order dismissing the first action. In the opinion of Justice York, "[w]hen the criminal conviction was reversed, there should have been a motion to vacate" Justice Stallman's decision, which had "res judicata" effect.

Consequently, plaintiff moved for leave to renew Justice Stallman's order and, upon renewal, to reinstate the complaint. By order dated August 13, 2007, Justice Paul G. Feinman granted plaintiff's request for renewal, and, upon renewal, denied the building defendants' motion for summary judgment without prejudice to again so move upon the completion of discovery.

The action was also restored against the municipal defendants. The court pointed out that the motion for summary judgment was predicated upon a criminal conviction that was vacated after the motion was made, and ruled that "[t]he extant record, therefore, is inadequate to exclude issues of fact regarding the existence of probable cause and the recitation of 'undisputed facts' in the moving affirmation [on the prior summary judgment motion] is no longer accurate."

On appeal, the building defendants contend that inasmuch as plaintiff did not move to vacate his default within one year, as required by CPLR 5015 (a) (1), he could not seek to revisit their unopposed motion for summary judgment. They also argue that plaintiff has not, and cannot, demonstrate a meritorious cause of action against them, also required by CPLR 5015 (a) (1).

Since plaintiff came forward with new evidence that would change the prior determination (*see* CPLR 2221 [e] [2]; 5015 [a] [2]), the motion court properly granted renewal and, upon renewal, denied summary judgment. That the prior determination was made on a motion for summary judgment that plaintiff did not oppose did not require that plaintiff seek vacatur of the prior order pursuant to CPLR 5015 (a) (1) (*see Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68 [2003]; *see also* Siegel, Practice Commentaries, McKinney's Cons Law of NY, Book 7B, CPLR C5015:6, at 213-214 [2007 ed]).

Moreover, a motion for leave to renew is not subject to any particular time constraints (*see* CPLR 2221 [e] [1]; 5015 [a] [2]; *Luna v Port Auth. of N.Y. & N.J.*, 21 AD3d 324, 326 [2005]). A motion to renew simply requires a showing of "new facts not offered on the prior motion that would change the prior determination" or "a change in the law that would change the prior determination," and a "reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [2], ▉).

Here, there can be no doubt that the reversal of plaintiff's conviction constitutes such "new facts not offered on the prior motion" or "newly-discovered evidence" that would have, if known to the motion court, produced a different result, not least because it called into question whether the building defendants' complaint to the police had been made in good faith and/or whether the officers had possessed the necessary probable cause to arrest plaintiff in the first place.

As for plaintiff's "reasonable justification for the failure to present such facts on the prior motion," it is self-evident that

he could not have done so until the Appellate Term reversed his conviction, on April 12, 2004, at which time he began to revive his effort to recover civil damages from defendants. When his initial effort was rejected by Justice York, plaintiff promptly followed the latter's suggestion to seek vacatur of Justice Stallman's order.

Contrary to the dissent, plaintiff should not be faulted for his former attorney's failure to oppose the motion for summary judgment or to inform the court that the appeal of the criminal conviction was pending. Indeed, plaintiff was not even aware that a motion for summary judgment had been made. Thus, unlike *Rubinstein v Goldman* (225 AD2d 328, 328, 329 [1996]), where counsel answered the original motion and then attempted "to raise entirely new issues on reargument and to submit, without sufficient excuse, new facts on renewal," here, in granting the renewal motion, the court was not "freely giv[ing]" plaintiff a "second chance" to raise issues that should have been raised initially.

Furthermore, Justice Stallman's order dismissing the complaint was entered on October 31, 2003, and a judgment dismissing the complaint as against all defendants was entered on February 17, 2004. Two months later, on April 12, 2004, the Appellate Term reversed plaintiff's conviction. Within one year of the reversal, plaintiff retained new counsel who commenced a new action; plaintiff also commenced a pro se action against Casanova at about the same time.

Although the better practice would have been to move for renewal prior to commencing these new actions, the new actions show that plaintiff had not fallen asleep at the wheel. Upon receiving guidance by Justice York, plaintiff immediately moved for renewal. Under these circumstances it cannot be said that plaintiff unreasonably delayed seeking relief after learning of the new evidence (*cf. Levy v New York City Health & Hosps. Corp.*, 40 AD3d 359, 360 [2007] [renewal motion properly denied in malpractice action, which was dismissed because of attorney's " 'prodigious' but unsuccessful efforts to find an expert who would support the claim of malpractice," where five years after complaint dismissed attorney finally found a physician who purportedly supported a malpractice claim, but attorney failed to show, inter alia, a reasonable justification for the five-year delay]).

Accordingly, the order of the Supreme Court, New York County (Paul G. Feinman, J.), entered August 16, 2007, which,

insofar as appealed from, granted plaintiff's motion to renew a prior order, same court (Michael D. Stallman, J.), entered October 31, 2003, granting defendants-appellants' motion for summary judgment dismissing the complaint as against them, and, upon renewal, denied defendants-appellants' motion for summary judgment, should be affirmed, without costs.

McGUIRE, J. (dissenting). I disagree with the majority that Supreme Court properly granted plaintiff's motion to renew appellants' prior motion for summary judgment dismissing the complaint.

On September 18, 1998, plaintiff was involved in an altercation with defendant-appellant Casanova, the superintendent of a building owned by defendant-appellant Jake Realty LLC, and managed by defendant-appellant Pine Management. The altercation occurred in the building of which Casanova was the superintendent; plaintiff was a tenant in the building. As a result of the altercation, plaintiff was placed under arrest by New York City police officers and was later convicted, following a jury trial, in New York County Criminal Court of harassment in the second degree and resisting arrest. Following his arrest but prior to his conviction, plaintiff commenced this action in September 1999 against appellants and the City of New York and the police officers who arrested him to recover damages for false arrest, malicious prosecution, assault and battery, and violations of 42 USC § 1983.

Appellants moved for summary judgment dismissing the complaint against them and the City of New York and the police officers cross-moved for the same relief. Plaintiff failed to submit opposition to these motions and also failed to appear at oral argument. By an order dated October 28, 2003, Supreme Court granted the motions on the ground that plaintiff's conviction established that the police had probable cause to arrest plaintiff and that a finding that probable cause existed for the arrest was fatal to plaintiff's claims. Supreme Court noted that plaintiff did not submit any evidence in opposition to the motions, but the court did not grant the motions based on plaintiff's failure to oppose them or appear for oral argument.

By an order dated April 12, 2004, the Appellate Term, First Department, reversed plaintiff's judgment of conviction, finding that plaintiff's conviction for harassment in the second degree was against the weight of the evidence, and that his conviction for resisting arrest had to be dismissed because the police lacked probable cause to arrest him (*People v Ramos*, 3 Misc 3d 127[A], 2004 NY Slip Op 50324[U] [2004]).

More than three years later, by motion papers dated May 18, 2007, plaintiff moved to renew the motions for summary judgment. Plaintiff argued that Supreme Court's order granting summary judgment dismissing the complaint was predicated on his conviction and that the conviction was reversed after the order had been issued. By an order dated August 13, 2007, Supreme Court granted plaintiff's motion to renew and, upon renewal, denied appellants' motion for summary judgment. This appeal ensued.

Despite plaintiff's failure to oppose the motions for summary judgment or appear at oral argument on those motions, plaintiff correctly sought relief by moving to renew those motions. "A summary judgment motion should not be granted merely because the party against whom judgment is sought failed to submit papers in opposition to the motion" (*Liberty Taxi Mgt., Inc. v Gincherman*, 32 AD3d 276, 277 n [2006]). Rather, where a party fails to submit opposition to a motion for summary judgment, the court is required to "assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law" (*id.*, quoting *Vermont Teddy Bear Co., Inc. v 1-800 Beargram Co.*, 373 F3d 241, 244 [2d Cir 2004]). In other words, a summary judgment motion should not be granted based solely on a party's failure to submit opposition, i.e., on "default" (*see Vermont Teddy Bear Co.*, 373 F3d at 245-247). Of course, however, a court may dismiss an action based upon a party's failure to appear before the court for a scheduled appearance (22 NYCRR 202.27), but here the court did not do that. Instead, the court reviewed the motions for summary judgment to ascertain whether the movants met their respective burdens, and, based on its assessment of those motions, granted the movants summary judgment. Because the order deciding the motions was not a default order or judgment, plaintiff could not seek relief under CPLR 5015 (a) (1). Rather, plaintiff correctly sought relief under CPLR 2221.

Leave to renew is not freely given to a party who did not exercise due diligence in opposing the initial motion (*see Rubinstein v Goldman*, 225 AD2d 328 [1996], *lv denied* 88 NY2d 815 [1996]; *see also Chelsea Piers Mgt. v Forest Elec. Corp.*, 281 AD2d 252 [2001]), and plaintiff did not exercise due diligence in opposing the motions for summary judgment. Indeed, plaintiff offered no explanation at all for his failure to oppose the motions. He did not claim that he was not given notice of the mo-

tions; he did not offer any explanation or excuse for his failure to oppose the motions; and he offered no excuse for his failure to alert Supreme Court that his appeal from his criminal conviction was sub judice (*see Beyl v Franchini*, 37 AD3d 505, 506 [2007] [renewal properly denied where plaintiff failed to offer an explanation for his failure to seek an adjournment of defendants' prior motion to permit plaintiff's expert to perform an examination of plaintiff]; *cf. Luna v Port Auth. of N.Y. & N.J.*, 21 AD3d 324 [2005] [plaintiff informed motion court of the circumstances surrounding plaintiff's inability to present certain evidence in opposition to defendants' motion before the motion court ruled on defendants' motion]). Rather, in his affirmation in support of plaintiff's motion to renew, plaintiff's counsel merely stated that he was "puzzled by the fact that [the motions] were unopposed by [plaintiff's] former counsel at the time" those motions were made. Counsel's puzzlement is *not* an excuse. To the contrary, it is insufficient as a matter of law to explain plaintiff's failure to oppose the motions (*see Okun v Tanners*, 11 NY3d 762 [2008], *revg* 47 AD3d 475 [2008]).

Under these circumstances, Supreme Court should have denied the motion to renew as a matter of law. Had plaintiff exercised due diligence and notified the court hearing the motions for summary judgment that his appeal from his criminal conviction was pending at the time the motions for summary judgment were made, the court could have adjourned the motions or held them in abeyance pending the resolution of the criminal appeal and avoided deciding the motions on the basis of the criminal conviction (*see Beyl, supra*). Plaintiff's appeal to the Appellate Term had already been heard and was sub judice at the time the motions for summary judgment were made.

Moreover, plaintiff's failings go beyond failing to exercise any diligence in opposing the motions and failing to offer any excuse for his failure to do so. Plaintiff failed to seek renewal *for more than three years* after the Appellate Term reversed his conviction, and even then did so only at the urging of Supreme Court (or, as the majority charitably puts it, after "receiving guidance" from Supreme Court). Although a motion to renew is not subject to any particular limitation of time in which it must be made, I think it evident that plaintiff's protracted and unexplained delay is utterly inexcusable (*see e.g. Levy v New York City Health & Hosps. Corp.*, 40 AD3d 359 [2007], *lv dismissed* 9 NY3d 1001 [2007] [renewal denied where plaintiff, in seeking renewal of prior motion, failed to offer reasonable justification

for her five-year delay in seeking renewal]; *Cole-Hatchard v Grand Union*, 270 AD2d 447 [2000] [renewal improperly granted where party seeking renewal failed to offer excuse for seven-month delay in seeking renewal]; *Dankner v Szurzan & Dorf*, 226 AD2d 669 [1996] [renewal properly denied where party seeking renewal failed to offer an explanation for her 17-month delay in seeking renewal]; *Ramsco, Inc. v Riozzi*, 210 AD2d 592 [1994] [renewal properly denied where party seeking renewal failed to offer excuse for its seven-month delay in seeking renewal]; *Elgem, Inc. v National Gypsum*, 192 AD2d 636 [1993] [renewal properly denied where party seeking renewal failed to offer explanation for his 13-month delay in seeking renewal]). By nonetheless granting renewal and denying appellants' motion for summary judgment, Supreme Court failed to heed legal standards and unjustifiably vitiated appellants' legitimate finality interests and expectations. In affirming, the majority does the same.

TOM, J.P., and DEGRASSE, J., concur with ACOSTA, J.; NARDELLI and McGUIRE, JJ., dissent in a separate opinion by McGUIRE, J.

Order, Supreme Court, New York County, entered August 16, 2007, affirmed, without costs.