A.P. v Olivero (2026 NY Slip Op 50169(U))

[*1]

A.P. v Olivero

2026 NY Slip Op 50169(U)

Decided on February 17, 2026

Supreme Court, Bronx County

Hummel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 17, 2026
Supreme Court, Bronx County

A.P. an infant by M.P. her mother 
 and natural guardian and M.P. individually, Plaintiffs,

againstFrancisco Olivero, Defendant.

Index No. 804363/2023e

Plaintiffs' attorney THOMAS COMBS Firm Name: Levine & Slavit, PLLC Address: 60 E. 42nd St. Ste. 2101, New York, NY 10165 Phone: 212-687-2777 Service E-mail: [email protected] Other E-mails: [email protected]Defendant's User Name: CRISMEILY ANDUJAR ALBURQUERQUE Address: 3446 Vernon Blvd, Queens, NY 11106 Phone: 9293892687 Service E-mail: [email protected]

Veronica G. Hummel, J.

In accordance with CPLR 2219(a), the decision herein is made upon consideration of all papers filed in NYSCEF by the parties regarding the motion by defendant FRANCISCO OLIVERO [Mot. Seq. 2] seeking an order: pursuant to CPLR 5015(a)(1)(3) and (4) and in the interest of justice, vacating the Court's previous order, dated April 3, 2024 ("the Default Judgment Decision"), that granted, on default, the motion of plaintiffs A.P. an infant by M.P. her mother and natural guardian and M.P. individually [Mot. Seq.1], for a default judgment against defendant on liability; vacating the order of the Court, dated August 14, 2025, which, at the conclusion of the inquest hearing ("the Inquest Decision"), awarded plaintiffs four million dollars ($4,000,000) in monetary damages against defendant; and granting an order, pursuant to CPLR 2004 and 3012(d), extending defendant's time to file an answer and restoring the case to active status.
Defendant is the owner of two buildings. The first building, in which he lives in Apartment 1, is a two-family house located at 849 Van Nest Avenue, Bronx, NY ("the Van Nest Ave. Property"). The second property is located at 1236 Waring Avenue, Bronx, NY, and is the building where his adult children and family reside ("the Waring Ave. Property"). 
Plaintiff and the infant plaintiff were lease tenants in Apartment 2 in the Van Nest Ave. [*2]Property. Defendant rented Apartment 2 to plaintiffs, and managed the tenancy, including leases, city inspections, and tenant complaints.
The accident occurred on September 5, 2022. The infant plaintiff was injured by a glass panel of an interior bedroom door inside Apartment 2 that broke, causing her personal injuries. Plaintiffs allege that defendant was negligent in his ownership, operation, and maintenance of the subject premises. More specifically, the subject door with glass panels was noncompliant with the building code and was otherwise inappropriate for use inside the apartment.
The infant plaintiff, who was 10 years old, suffered injuries as the result of the accident, including severe deep lacerations to both arms caused by the broken glass. Plaintiff's medical treatment included surgery consisting of an exploration of the right arm with washout and repair of the ulnar nerve at the mid-biceps level. After the accident, the infant plaintiff was repeatedly treated by plastic surgeons, occupational therapists, and nerve specialists. Several fingers are permanently bent and lack feeling and there is a possible need for future nerve transplant surgery. The infant plaintiff's arms and hands are scarred.
Plaintiff commenced this action by filing a summons and verified complaint on March 17, 2023. Defendant was personally served with the pleadings on March 30, 2023, at the Waring Ave. Property. Proof of service was filed on April 3, 2023. Defendant does not deny being personal served with the pleadings as set forth in the affidavit of service.
Defendant elected to not file an answer or to appear in the action.
The first default letter was mailed to defendant by plaintiffs on May 5, 2023, at the Waring Ave. Property. A second default letter was sent to the same address on June 12, 2023. Defendant does not deny receiving the letters.
Two months later, plaintiffs filed the motion for a default judgment [Mot. Seq.1] on August 31, 2023. A copy of the Notice of Motion, Affirmation in Support and the exhibits were mailed to defendant, by regular mail, at the Waring Ave. Property. Defendant does not deny receiving the motion papers.
The motion was marked fully submitted on January 24, 2024. Defendant did not appear in the action, nor did defendant oppose the motion.
On April 3, 2024, the Court issued the Default Judgment Decision granting plaintiffs partial summary judgment on liability without opposition.
The Default Judgment Decision contained explicit directives requiring service of the decision and other filings on the non-appearing defaulting defendant. Specifically, plaintiffs were required to serve a copy of the Default Judgment Decision, with notice of entry, upon non-appearing defendant by first class mail and registered mail, return receipt requested, and by overnight mail or email upon defendant's insurer, if known, by May 1, 2024. Proof of said service was required.
The Default Judgment Decision further ordered that plaintiffs serve a copy of the Note of Issue and the letter requesting the scheduling of an inquest on defendant by first class mail within 10 days of filing of said documents in NYSCEF and directed that an affidavit of service be filed within 10 days of said service.
Of note, none of these directives are required by the CPLR but are instead mandated by this Court to offer the non-appearing defendant an opportunity to participate in the litigation, despite defendant's non-appearance and default.
On April 8, 2024, plaintiffs satisfied the extensive service directives set forth in the Default Judgment Decision by serving defendant at the Waring Ave. Property with a copy of the [*3]decision, the Note of Issue, and the letter requesting the inquest by regular and certified mail, return receipt required, and uploading proof of said service. Defendant personally signed for this package, which included the Default Judgment Decision and other notifications, on April 11, 2024. Once again, defendant does not deny receiving the served documents.
Despite receiving this notice of the litigation and the default judgment entered against him, defendant did not appear in the action, or contact the Court or plaintiffs' counsel.
The next day, on April 9, 2024, the Court posted a Court Notice scheduling the action for an inquest on June 27, 2024. The Court Notice once again included extra service directives to inform the non-appearing defendant of the scheduled court proceedings. On May 16, 2024, plaintiffs fully satisfied the additional service requirements by serving a copy of the Court Notice on defendant by regular mail at the Waring Ave. Property and the Van Nest Ave. Property addresses. Once again, defendant does not specifically deny receiving the served documents.
On June 27, 2024, plaintiffs' attorney appeared at the scheduled court appearance for the inquest. In contrast, once again, defendant failed to appear or to communicate with plaintiffs' counsel or the Court.
In the courtroom, plaintiffs' attorney requested additional time to conduct discovery and sought an adjournment of the inquest. The request was granted on the record and the inquest was adjourned to September 19, 2024. The same day, the Court posted a Court Notice setting forth the adjournment. Plaintiffs did not serve this Court Notice of adjournment on defendant as directed by the Court.
Two months later, by letter dated September 12, 2024, plaintiffs requested a further adjournment of the inquest. The letter "cc'd" defendant at the Waring Ave. Property address.
The same day, the Court granted the adjournment and adjourned the inquest to June 18, 2025, by Court Notice. Defendant was served by plaintiffs with a copy of the Court Notice adjourning the inquest by regular mail addressed to both of defendant's properties. An affidavit of service was uploaded to NYSCEF.
Defendant does not deny receiving said mailing. Still defendant failed to appear in the action.
On May 27, 2025, the inquest was adjourned by the Court to August 14, 2025. Plaintiffs served defendant with a copy of the Court Notice of adjournment by regular mail addressed to the Waring Ave. Property and the Van Nest Ave. Property. Defendant received said notice, but took no action.
On August 8, 2025, plaintiffs satisfied a Court directive and uploaded to NYSCEF copies of the evidence, including medical records, photographs, and trial memorandum, that plaintiffs anticipated utilizing at the inquest.
The inquest was conducted as scheduled on August 14, 2025, at 11:30a.m. Plaintiffs appeared with witnesses and evidence and were fully prepared to proceed. In contrast, despite receiving numerous notifications over the past two years of the court decisions and appearances, as well as the pending inquest, defendant did not appear at the inquest. Furthermore, at no time throughout the litigation did defendant communicate with the Court in any manner.
The inquest was held on the record. The hearing consisted of the testimony of plaintiffs and the submission of photographs and medical record evidence. Plaintiffs' attorney also provided the Court, as directed, with three sample settlement/verdicts awards of damages that concerned personal injuries like the personal injuries claimed by plaintiffs.
The same day, on August 14, 2025, the Court issued the Inquest Decision, noting defendant's continuous default. The Court found:
"this Court, upon conclusion of the Inquest makes these findings: Upon consideration of the testimony and exhibits, the Court had a unique opportunity to hear the testimony of the Parent and the Infant and found the witness' testimony as to the happening of the accident and the pain and suffering experienced by the Infant to be credible. The Infant's injury and subsequent surgeries and treatment are documented in the medical records submitted. The Court finds that based on the Court's observations, the testimony, the exhibits, and the decision on liability, plaintiffs demonstrate by the required quantum of evidence that the Infant was severely injured on September 5, 2022, as the result of defendant's negligence and that, as the result of defendant's negligence, the Infant suffered cuts, nerve damage, and surgeries which caused pain and suffering and resulted in severe scars on the left and right hands and arms which are raised, wide, and discolored. The Court also observed the rigidity and bent nature of the three fingers on the Infant's right hand and finds it credible that plaintiff has no feeling in two of the fingers. The testimony also demonstrated that twelve-year-old plaintiff suffered and continues to suffer significant loss of enjoyment of life due to her inability to partake in activities and struggling at school that arises directly from her injuries. Furthermore, the evidence establishes that the scars and plaintiff's nerve damage are permanent and further surgeries will be required. The Court observed the scarring on limbs and found it to be very significant"The Court then determined that plaintiffs demonstrated by the required quantum of evidence that an award of $ 4,000,000 in damages for past and future pain and suffering and scarring was warranted.
Plaintiffs served non-appearing defendant with a copy of the Inquest Decision by regular mail at the two relevant addresses on August 25, 2025. The next day, on August 26, 2025, an Order and Judgment with costs in the amount of $4,013,996.92 was entered against the defaulting defendant ("the Judgment").
Based on the record it appears that, after the Judgment was entered, on September 2, 2025, defendant's mortgage company Rocket Mortgage LLC and defendant reported the loss to Assurant Insurance Company. On September 4, 2025, Assurant Insurance Company disclaimed coverage concluding that the insurance policy naming Rocket Mortgage LLC as mortgage holder covered only structural damages to defendant's buildings and was inapplicable to general liability claims such as are at issue in this action. Specifically, the insurance company emphasized that the Assurant insurance policy "is not a Homeowners' Policy and does not have a Section II Liability coverage Provision".
It is undisputed, therefore, that defendant, despite owning and renting to tenants in two buildings, never purchased a property owner's general liability policy that provides bodily injury coverage to protect his and his tenants' interests.
Four months later, on December 30, 2025, defendant filed this motion to vacate the Default Judgment Decision and Inquest Decision. Of note, the motion is made over one year after the entry of the Default Judgment on April 3, 2024, four months after the entry of the Inquest Decision and the resulting judgment, and after non-appearing defendant was served numerous Court Notices updating him as to the existence of and status of the action proceeding [*4]against him. Over the years, defendant never appeared in the action or communicated with plaintiffs' attorney or the Court.
In support of the motion, defendant submits an attorney affirmation, a personal affidavit, an insurance disclaim letter (dated September 4, 2025), a HPD Violations History, a proposed answer, PC request, and an affirmation of service. Defendant declined to submit a reply.
In opposition, plaintiff submits an attorney affirmation, affidavits of service, and an expert report. Both parties rely on the NYSCEF record for the history of the action.
AnalysisCPLR 5015(a)Defendant moves pursuant to CPLR 5015(a)(1), (3) and (4) for an order vacating the underlying decision and orders. In relevant part, CPLR 5015 (a) provides:
"The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party, or, if the moving party has entered the judgment or order, within one year after such entry; or . . .3. fraud, misrepresentation, or other misconduct of an adverse party; or . . .4. lack of jurisdiction to render the judgment or order . . . ."
CPLR 5015(a)(1)
Initially, the part of the motion that is made pursuant to CPLR 5015(a)(1) is denied as untimely. Defendant's motion to vacate the Default Judgment was filed on December 30, 2025, well over a year after the service of a copy of the Default Judgment with notice of entry was made on April 8, 2024. While the Court has inherent authority to vacate an order in the interest of justice, even where the statutory one-year period under CPLR 5015(a)(1) has expired, as set forth below, defendant fails to make a showing warranting vacatur on said grounds. See HSBC Bank USA, National Association v. Gallo, 238 AD3d 1123 (2d Dep't 2025); Martinez v. Government Employees Ins. Co., 113 AD3d 425 (1st Dep't 2014).
In any event, defendant fails to set forth a reasonable excuse justifying the grant of the motion. In order to obtain vacatur of a default judgment under CPLR 5015(a)(1), a party must demonstrate a reasonable excuse for the default and the existence of a potentially meritorious defense or claim. Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co., 67 NY2d 138 (1986); Li Fen Li v. Cannon, Co., 155 AD3d 858 (2d Dep't 2017); Gurin v. Pogge, 112 AD3d 1028 (3d Dep't 2013). The determination of whether to vacate a default judgment under CPLR 5015 rests within the sound discretion of the Supreme Court, although a disposition on the merits is strongly favored. see generally Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co., supra; Inwald Enterprises, LLC v. Aloha Energy, 153 AD3d 1008 (3d Dep't 2017). Accordingly, a motion to vacate a prior judgment is addressed to the court's sound discretion subject to reversal only where there has been a clear abuse of discretion (Inwald Enterprises, LLC v. Aloha Energy, supra; Carlson v. Dorsey, 161 AD3d 1317 (3d Dep't 2018)) and actions should be resolved on the merits when circumstances justify the same. see generally Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co., supra. Whether there is a reasonable excuse for a default is a discretionary, [*5]sui generis determination to be made by the court based on all relevant factors, including the extent of the delay, whether there has been prejudice to the opposing party, whether there has been willfulness, and the strong public policy in favor of resolving cases on the merits. Inwald Enterprises LLC v. Aloha Energy, supra.
Reasonable ExcuseIn terms of reasonable excuse, defendant alleges that during the pendency of this almost three-year litigation, defendant believed that the matter was being handled by his insurance company and required no further action from him. In addition, defendant contends that he was not properly served with a copy of the motion for default at his home address at the Van Nest Ave Property and only learned of the default upon receiving the Inquest Decision.
Applying the legal principles set forth above to the facts presented here, the motion is denied as defaulting defendant fails to demonstrate a reasonable excuse for the default. Defendant admits being personally served in the action and failing to appear. Thereafter, it is uncontradicted, defendant was served with numerous Court Notices giving defendant clear notice of the motion for a default judgment, the Default Judgment Decision, the scheduling of the inquest, the adjournments of the inquest, the Inquest Decision, and the Judgment. Defendant does not deny receiving the multiple notices of the lawsuit, judgment, and court proceedings that plaintiffs served. Instead, the record reflects a decision on the part of defendant to ignore the litigation and to choose to not appear in the action, to not contact the Court or plaintiffs' attorney, and to not attend any court appearances.
To the extent that defendant alleges that, after being served with process, he was under the mistaken belief that an insurance company was "handling" the action, there is insufficient evidentiary proof in the record to support such an allegation. While defendant avers in his personal affidavit that he contacted his mortgage company, Rocket Mortgage LLC after receiving the complaint and was told that the documents would be forwarded to the insurance company and "they would defend him", defendant provides no documentary evidence or confirmation from the mortgage company that reflects that this exchange actually occurred. In fact, the submitted evidence demonstrates that defendant, despite being served with the complaint in March 2023, and receiving the subsequent numerous Court Notices and Court decisions, did not attempt to notify the purported insurance carrier until after the Judgment was entered, in September 2025. As such, his claim of reasonable "reliance" is contradicted by the record.
Moreover, even assuming that defendant notified his mortgage company after receiving the complaint, his claimed reliance on the alleged representation by Rocket Mortgage LLC was not reasonable under the circumstances. Over the years following the service of process, defendant received multiple Court notifications and orders warning him that he was in default and that the action was proceeding to an inquest against him without opposition, and yet he took no action. Defendant did not contact Rocket Mortgage LLC or the purported insurance company again until after the Judgment was entered, ignored all Court notices, and made no effort to communicate with the Court or the plaintiffs' attorney. Such action was not reasonable under the circumstances.
In any event, it is undisputed that the relevant the insurance policy purchased by defendant's mortgage company was a typical structural policy, not a Homeowner's Policy, and did not include the necessary coverage for bodily injury applicable in this personal injury action. As such, there is no situation where defendant could reasonably expect that the insurance [*6]company would act on defendant's behalf in this personal injury case. As defendant, a building owner and landlord, made the decision to own, operate and rent two properties without purchasing the required personal injury insurance coverage to protect his interests and to protect his tenants, there was no good faith basis for defendant to "rely" on a mortgage company's structural insurance policy to act on his behalf in this lawsuit.
Furthermore, the claims by defendant that he was "not served with a copy of the default motion at his home address" and that he first "became aware of 'true' status of the matter after he received a copy of the inquest decision in August 2025" do not set forth a reasonable excuse. Except as provided under CPLR 3215(g), although this Court requires notice to a defaulting defendant, a plaintiff is not in fact required to give a defaulting defendant notice of the motion for a default judgment when the defendant has failed to appear and the default judgment is sought within a year of the default. CPLR 3215(g)(1); Bank of New York Mellon v. Cean, 204 AD3d 877 (2d Dep't 2022); Milman & Shwergold, P.C. v. Chase Manhattan Bank, N.A., 105 AD2d 652 (1st Dep't 1984). Regardless, plaintiffs' service of the motion on defendant proven herein was adequate under law and defendant does not deny receiving the papers.
Importantly, to ensure that non-appearing defendant was given extra notice of the lawsuit, this Court repeatedly implemented additional (and not statutorily required) service directives of all the relevant papers, including the Default Judgment Decision. Defendant was therefore informed of each step in the litigation as he admittedly received the motion papers, and the subsequent numerous Court Notices and Court orders served thereafter. In response, defendant took no action, and continually declined to participate in the litigation.
As for defendant's assertion that he did not understand the "true" nature of the case until the Judgment was entered, this allegation is legally meaningless. Of note, defendant personally signed for the package that included a copy of Default Judgment, the Note of Issue, and the letter requesting the scheduling of an inquest on April 11, 2024. His failure to investigate the meaning of the package of legal documents is not a reasonable excuse for his default. Furthermore, defendant's alleged "inexperience" is in no way a justification for ignoring the numerous court notices, which in fact were served as a curtsy and not required by law. Simply put, defendant was properly served with the summons and complaint and elected to default thereon and continued to ignore the litigation at his own risk.
Similarly, to the extent that defendant relies in his "lack of proficiency" in the English language as an excuse, under the circumstances, the allegation is not a legal justification for defendant landlord's default on the motion or in the action.
As such, based on the record, which includes extensive additional notices to defendant which defendant declined to act upon, the court finds that the excuse for the default is legally insufficient. See Expo Dev. Corp. v. 824 S. E. Blvd. Realty Corp., 113 AD3d 549 (1st Dep't 2014).
Meritorious Defense
Having determined that there is no excusable default, the court need not consider whether defendant demonstrated a potentially meritorious defense. Lynx Asset Services, LLC v. Nestor, 210 AD3d 433 (1st Dep't 2022); Amalgamated Suncoast Portfolio, LLC v. SGD Group Holdings II, LLC, 2026 NY Slip Op. 00339 (2d Dep't 2026). Having failed to demonstrate a reasonable excuse, the motion to vacate the Default Judgment and other Court orders under CPLR 5015(a)(1) is denied.
CPLR 5015(a)(3)-Fraud misrepresentation, or other misconduct of an adverse party.The Court finds that defendant fails to set forth a prima facia showing of fraud or misrepresentation warranting the vacatur of the relevant court decisions and orders. Firstly, having failed to demonstrate a reasonable excuse for the default, defendant's application under CPLR 5015(a)(3) must be denied. 3331 102 St. LLC v. Newport Beach Holdings, LLC, 205 AD3d 497 (1st Dep't 2022). Regardless, the ministerial errors pointed out by defendant in the pleadings, assuming they exist, are immaterial to the issues at hand and are not of the fraudulent nature sufficient to set forth a claim for intrinsic fraud. 3331 102 St. LLC v. Newport Beach Holdings, LLC, supra.
As for extrinsic fraud, the claim that plaintiffs' service of the default motion at the Warring Ave. Property and the lack of an apartment number somehow constituted a "fraud", is without any foundation in the facts or law. In any event, defendant concedes that he received notice of the motion and elected to default. Moreover, in fact, the defaulting defendant need not be served with a motion for a default in any case.
To the extent that defendant alleges that plaintiffs "intentionally avoided" serving him at the Van Nest Property, the contention lacks any legal impact. Furthermore, the Default Judgment Decision and other papers were served by regular and certified mail, and the service packet includes a signed USPS green card confirming that the certified mail was actually delivered to defendant. Defendant offers no explanation as to why, having signed for the certified mailing, he took no action.
In fact, the record proves that defendant was served with more notice of the proceedings than a typical defaulting defendant is awarded. Nor does defendant deny receiving the served papers. As such, defendant fails to make the required showing of fraud. The facts establish that defendant had repeated opportunities to participate, and his failure to respond was the result of his own inaction, not any misconduct by plaintiffs. Vacatur under CPLR 5015(a)(3) is therefore unwarranted.
CPLR 5015(a)(4) lack of jurisdiction to render the judgment or orderDefendant's next contention, that the complaint was insufficient to provide the Court with "jurisdiction" to render the Default Judgment Decision, is also rejected as lacking any legal merit. Defendant acknowledges that he was served in the action and was in default. Defendant provides no legal authority to support the convoluted argument that more was needed to acquired jurisdiction, and the Court finds the contention to be without merit as a matter of law.
Interests of JusticeThe Court finds that, the under the constellation of circumstances presented in this case, this action does not involve the very "unique or usual" facts that warrant the vacatur of the default judgment in the interests of substantial justice. Woodson v. Mendon Leasing Corp., 100 NY2d 62 (2003); Martinez v. Government Employees Ins. Co., supra. Defendant is a landlord/ building owner that rents apartments to families with children. Defendant failed to purchase and maintain the required insurance coverage to protect the tenants and his own interests. Furthermore, the residence was shown to have a defective condition which the landlord was aware of and failed to remedy, and which caused the infant plaintiff to suffer serious injury. As the result of the defective condition, the infant plaintiff was severely injured and suffers from deficiency and scars that will remain for her life.
Furthermore, defendant received more notice of his default and the progress of the litigation than is required by law and elected to ignore the notices at his own peril. Under the [*7]circumstance, the balance of justice does not weigh in defendant's favor.
Extension in time to answerIn light of the foregoing conclusions, defendant's request for an extension in time to answer is denied.
The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent any contention was not addressed by the Court, it is hereby rejected.
Accordingly, it is hereby
ORDERED that the motion by defendant FRANCISCO OLIVERO [Mot. Seq. 2]seeking an order: pursuant to CPLR 5015(a)(1)(3) and (4) and in the interest of justice, vacating the Court's previous order, dated April 3, 2024 ("the Default Judgment Decision"), that granted, on default, the motion of plaintiffs A.P. an infant by M.P. her mother and natural guardian and M.P. individually [Mot. Seq.1], for a default judgment against defendant on liability; vacating the order of the Court, dated August 14, 2025, which, at the conclusion of the inquest hearing ("the Inquest Decision"), awarded plaintiffs four million dollars ($4,000,000) in monetary damages against defendant; and granting an order, pursuant to CPLR 2004 and 3012(d), extending defendant's time to file an answer and restoring the case to active status is DENIED; and it is further
ORDERED that the Clerk shall mark motion sequence 2 decided and the action disposed in all court records.
The foregoing constitutes the decision and order of the Court.
Dated: February 17, 2026E N T E R,HON. VERONICA G. HUMMEL, A.S.C.J.