[890 NYS2d 789]

State of New York, Plaintiff, v Christine S. Williams, as Executrix of William H. Schacht, Deceased, et al., Defendants.

Supreme Court, Albany County, September 18, 2009

APPEARANCES OF COUNSEL

*Robinson Brog Leinwand Greene Genovese & Gluck, P.C.*, New York City (*David C. Burger* of counsel), for Mystic Tank Lines Corp., as Successor in Interest to R.J. Guerrera, Inc., defendant. *Andrew M. Cuomo, Attorney General*, Albany (*Richard G. Greene* of counsel), for plaintiff.

## OPINION OF THE COURT

RICHARD M. PLATKIN, J.

Defendant R.J. Guerrera, Inc. moves pursuant to CPLR 2221 (e) to renew its opposition to plaintiff's renewed application for a default judgment and pursuant to CPLR 5015 to vacate the default judgment entered against it upon such application. Plaintiff, the State of New York (plaintiff or State), opposes the motion.

Background

The lengthy procedural background to this application is set forth in the prior decision and order of this court (Platkin, J.) dated June 24, 2008, familiarity with which is presumed (*see* 20 Misc 3d 1106[A], 2008 NY Slip Op 51246[U] [2008] [hereinafter prior decision]). In brief, the State obtained a default judgment against defendant R.J. Guerrera, Inc., and Supreme Court (McCarthy, J.) denied Guerrera's motion pursuant to CPLR 5015 to vacate such judgment. On appeal, the Appellate Division, Third Department, agreed with Supreme Court that Guerrera was in default and lacked a reasonable excuse for such default. The Appellate Division nonetheless vacated the default judgment based on the State's failure to include within its application for a default judgment proof establishing the facts of its claim:

> "An applicant for a default judgment must submit either an affidavit asserting the facts comprising the claim or a verified complaint, so the court has nonhearsay confirmation of the factual basis consti-

tuting a prima facie case . . . Having failed to meet the statutory requirements for proof to support an application for a default judgment, the default judgment is a nullity and must be vacated, without prejudice to plaintiff renewing its application" (*State of New York v Williams*, 44 AD3d 1149, 1151-1152 [3d Dept 2007] [citations omitted]).

Thereafter, the State renewed its application for a default judgment on an expanded factual record. This court granted a default judgment for the reasons set forth in the prior decision. With respect to confirmation of the facts underlying plaintiff's claim, the court stated as follows:

"In order to meet its burden of providing 'nonhearsay confirmation of the factual basis constituting a prima facie case' (*Williams, supra*, 44 AD3d at 1152), the State relies upon the Cremo Affidavit, which establishes that Guerrera delivered petroleum to the Spill Site at relevant times. The State also relies upon the Affidavit of Peter J. DeCicco, an engineering geologist employed by the State Department of Environmental Conservation ('DEC'), who opines that gasoline was discharged during the filling of the underground storage tanks at the Spill Site. This opinion is based on, *inter alia:* (a) petroleum contaminated soil above both 4,000 gallon tanks; (b) the discovery of petroleum contaminated soil in the vicinity of the pipes used to fill both tanks; and (c) gasoline stains on the outside wall of the 2,000 gallon tank.

"The State also directs the Court's attention to the provisions of the Navigation Law that hold a supplier or transporter of petroleum liable for discharges that occur during the delivery of petroleum where such supplier or transporter has responsibility for the manner and means of delivery (*see e.g. State of New York v. Avery-Hall Corp.*, 279 AD2d 199 [3d Dept 2001]). In addition, the State relies upon well settled law establishing that liability under the Navigation Law is joint and several, and, therefore, joint contributors to a petroleum discharge each are fully liable for all of the remediation costs incurred by the State (*see e.g. State of New York v. Arthur L. Moon, Inc.*, 228 AD2d 826 [3d Dept 1996], *leave denied* 84 NY2d 861)." (2008 NY Slip Op 51246[U], \*3.)

On this motion to renew its opposition to the State's renewed application for a default judgment and to vacate the default judgment entered upon such application, Guerrera contends that

> "[r]ecent fact discovery, taken since submission of the State's Renewal Motion Papers, establishes that the facts and conclusions alleged in the State's Renewal Motion papers are incorrect, unsubstantiated and in fact contradicted by the evidence. This recent fact discovery disproves the only grounds alleged by the State for holding Guerrera liable for the petroleum discharge at the Spill Site."

The "new facts" relied upon by Guerrera arise principally from the deposition of Peter J. DeCicco, an engineering geologist with the Department of Environmental Conservation (DEC).[1] As noted above, the State relied upon the affidavit of Mr. DeCicco, sworn to on December 6, 2007, in support of its renewed motion for a default judgment. In his affidavit, Mr. De-Cicco avers that

> "[t]he source of my information is my personal knowledge based upon my involvement in the investigation and remediation at the spill site described below, and my review of the official reports and records of DEC relating to the investigation, remediation, cleanup and removal of the reported petroleum discharge at [the spill site]."

According to Guerrera, the bulk of the DeCicco affidavit addresses evidence that petroleum products were present in groundwater and soil samples taken from the spill site, with "only extremely limited statements attempting to conclude that the discharge of petroleum products at the Spill Site was due in part to the over-filling of tanks." However, with respect to the issue of overfilling, the DeCicco affidavit does provide the following averments:

> "34. During the excavation activities in Stage 1 involving tanks designated as T-1 to T-4, petroleum impacted soil was observed above the 4,000 gallon tank designated as T-3 and above the 4,000 gallon tank designated as T-4 and in the vicinity of the filling manholes indicating that overfilling of these two

---

1. Pursuant to the stipulation of the parties, Guerrera was permitted to participate in fact discovery following entry of the default judgment against it in connection with its prosecution of claims against other potentially responsible parties.

tanks took place periodically during petroleum deliveries. . . .

"35. During the excavation in Stage II involving tanks designated as T-5, FO and WO, gasoline stains were observed on the outside wall of the 2,000 gallon tank designated as T-5 indicating this tank was overfilled during deliveries."

In both paragraphs, Mr. DeCicco cites to the tank closure report prepared by Leggette, Brashears & Graham, Inc. (LBG), DEC's engineering consultant/contractor on the remediation project. The tank closure report was submitted as part of the State's renewed application for a default judgment.

Further, two concluding paragraphs of the DeCicco affidavit, labeled "Conclusions," also speak to the alleged overfilling of the gasoline storage tanks:

"63. Based on the above, it is also my professional opinion to a high degree of certainty that gasoline was discharged at the Spill Site during the delivery of gasoline to the underground storage tanks at the Spill Site including, but not limited to, discharges of gasoline during the delivery of gasoline to the underground storage tanks at the Spill Site.

"64. My opinion that gasoline was discharged at the Spill Site during the delivery of gasoline to the underground storage tanks at the Spill Site is based on the facts referenced above including, but not limited to, the LBG Underground Storage Tank Closure Report concerning the Spill Site that documents the discovery of petroleum-contaminated soil above both of the 4,000 gallon tanks at the Spill Site indicating that both tanks were overfilled during the delivery process; the discovery of petroleum contaminated soil in the vicinity of the pipes used to fill the two 4,000 gallon tanks indicating that discharge(s) of petroleum occurred during the delivery process to both tanks; and the gasoline stains observed on the outside wall of the 2,000 gallon tank indicating that the tank was overfilled during delivery."

During his deposition, conducted on September 15, 2008, Mr. DeCicco testified that he supervised James Hardy, the DEC project manager for the spill site, from February 2001 through October 2005. Thereafter, Mr. DeCicco assumed direct responsibility for managing the remediation project. Mr. DeCicco

acknowledged that he did not visit the spill site until October 2005, well after the underground storage tanks had been removed. He visited the spill site again in June 2008, for about three hours, to review the status of the remediation project. With respect to his prior averments regarding the overfilling of the storage tanks, Mr. DeCicco acknowledged that he relied primarily on the tank closure report prepared by LBG in formulating his opinions. He was questioned at length by Guerrera's counsel with regard to the soil contamination above the storage tanks and the gasoline stains on the outside of one of the tanks, the factual predicates for his conclusion regarding overfilling.

It is Guerrera's contention that Mr. DeCicco had no personal knowledge to support the conclusions regarding the overfilling of the storage tanks set forth in his affidavit and that he "blindly adopted the conclusions stated" in the tank closure report. As such, Guerrera argues that his opinions are speculative and unsupported by any factual or scientific findings.

In opposition, the State offers a variety of arguments. First, it contends that Guerrera, as a defaulting defendant, has no role in the court's review of the sufficiency of proof put forward by plaintiff. Relatedly, the State argues that the sufficiency of such proof is determined at the default application stage of the case, not at the close of fact discovery.

Second, the State contends that the court correctly determined that its proof of liability was sufficient to support the entry of a default judgment pursuant to CPLR 3215. And even if the court were to rely upon the new evidence put forward by Guerrera, the State argues that the underlying facts set forth in the tank closure report are sufficient to allege a viable cause of action under the Navigation Law against Guerrera.

Third, the State contends that the facts that form the basis of Guerrera's motion are not "new" and, in any event, Guerrera has failed to offer a reasonable excuse for its failure to provide such facts to the court on the prior motion practice.

Finally, the State argues that Guerrera has failed to provide evidence that would warrant vacatur of the prior judgment pursuant to CPLR 5015.

The court will consider each of these contentions in turn.

Analysis

A motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change

in the law that would change the prior determination" (CPLR 2221 [e] [2]). Such motion "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [3]).

The court begins its analysis with the State's contention that Guerrera's motion is procedurally defective. Specifically, the State argues that Guerrera, as a defaulting defendant, has no role in the court's review of the sufficiency of proof put forward by plaintiff to establish the facts constituting its claim and that, in any event, the sufficiency of such proof must be determined at the default application stage of the case, not the postdiscovery stage.

As an initial matter, the court is not persuaded by the State's contention that, under the facts and circumstances of this case, Guerrera has no role in the court's process of determining whether plaintiff has provided proof sufficient to demonstrate a viable cause of action. To be sure, a defaulting defendant admits all material allegations of the complaint (*McClelland v Climax Hosiery Mills*, 252 NY 347 [1930]). Nonetheless, "[o]n any application for judgment by default, the applicant shall file . . . proof of the facts constituting the claim" (CPLR 3215 [f]). In granting a default judgment, the court must necessarily be satisfied that the movant has met its burden of providing "nonhearsay confirmation of the factual basis constituting a prima facie case" (*Williams*, 44 AD3d at 1152). Indeed, the Third Department has held that the absence of proof of the claim renders the resulting default judgment a nullity (*id.*; *but see Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 71 [2003]), a contention that Guerrera is entitled to press on an application to vacate the default judgment entered against it.

And while it previously has been determined that "[Guerrera] was not entitled to notice of plaintiff's application for a default judgment" (44 AD3d at 1151), the State did in fact make both its original and renewed applications for a default judgment on notice to Guerrera. Indeed, Guerrera opposed the State's renewed motion for a default judgment on several grounds without the State pressing the procedural objection that it now relies upon. Under all of these circumstances, the court is satisfied that Guerrera may challenge the sufficiency of the proof put forward by the State to establish the facts comprising its Navigation Law claim against Guerrera.

That said, the court does see merit in the State's contention that the sufficiency of plaintiff's application for a default judg-

ment must be determined on the basis of the application at the time it was made, not on the basis of the factual record compiled during pretrial discovery or following a plenary trial on the merits. Where, as here, the default application is based upon defendant's failure to appear, the plaintiff generally will not have had the benefit of fact discovery in compiling its application for a default judgment. Thus, CPLR 3215 (f) specifically contemplates that a verified complaint "may be used as the affidavit of the facts constituting the claim."[2] This is an unusual case only because Guerrera's default did not preclude it from participating in fact discovery in connection with its claims for affirmative relief against other potentially responsible parties. It does not follow, however, that the sufficiency of the State's submission made prior to discovery must be measured against the factual record compiled following discovery.

Guerrera, however, complains that the State's position is unsupported by any citations to authority and, indeed, is contradicted by numerous Appellate Division decisions holding that "new evidence undermining a plaintiff's allegations may be submitted in support of a renewal motion seeking to challenge entry of a default judgment" (reply mem of law at 6). In support of this position, Guerrera cites a variety of cases in which courts have entertained renewal motions seeking to vacate entry of a default judgment on the basis of newly discovered facts (*see e.g. Whitbeck v Erin's Isle*, 109 AD2d 1032 [3d Dept 1985] [vacating default judgment upon renewed motion to vacate where new facts demonstrate meritorious defense]; *Zaldin v Kiamesha Concord*, 78 AD2d 744 [3d Dept 1980] [denying similar motion where movant failed to offer reasonable excuse for failing to proffer new evidence on prior motion]).

But none of the cases relied upon by Guerrera involve new facts that allegedly undermine the prima facie demonstration of merit required under CPLR 3215 (f). Rather, the authorities cited and discussed by Guerrera involve defaulting defendants against whom a judgment was entered seeking to offer new facts relevant to a motion to vacate, such as newly developed proof of a meritorious defense, a reasonable excuse for the default, lack of notice of the summons, or some other newly

---

**2.** Given that the State is the plaintiff, CPLR 3215 (f) further allows proof of the facts comprising its claim to be established "by affidavit made by an attorney from the office of the attorney general who has or obtains knowledge of such facts through review of state records or otherwise." This provision does not appear to be implicated here.

developed facts that bear on the vacatur analysis under CPLR 5015 or 317. Thus, if the prior motion had been one by Guerrera to vacate a default judgment and the court denied its application because it had not demonstrated a meritorious defense, the cases put forward by Guerrera would support a motion for renewal based on subsequently adduced proof demonstrating a meritorious defense.[3] These authorities do not, however, support Guerrera's position that a plaintiff's application for a default judgment should be measured against an expanded factual record compiled following entry of the default judgment.

Moreover, there is nothing inconsistent about finding that a plaintiff has met its burden of proof under CPLR 3215 (f) and also concluding, whether at the time of the initial application for a default judgment or thereafter, that the defendant nonetheless has a meritorious defense to the action and might well prevail if the case were allowed to proceed to trial. Courts routinely decline to reopen judgments despite a meritorious defense where a reasonable excuse for the default is lacking. And a plaintiff's burden under CPLR 3215 (f) is, of course, limited. After all, a mere verified complaint will suffice to provide "nonhearsay confirmation of the factual basis constituting a prima facie case" (44 AD3d at 1152). "The standard of proof is not stringent, amounting only to some firsthand confirmation of the facts" (*Feffer v Malpeso*, 210 AD2d 60, 61 [1st Dept 1994] ["minimal standard"]; *Gagen v Kipany Prods.*, 289 AD2d 844, 845 [3d Dept 2001] [some proof of liability so that the reviewing court can determine that the "prima facie validity" of the uncontested cause of action has been established]).

Guerrera does not contend that the proof offered by the State on its renewed motion for a default judgment is, on its face, insufficient to carry its burden under CPLR 3215 (f). Indeed, Guerrera does not seek to reargue the court's prior determination on this point, moving solely for renewal on the basis of allegedly new facts. Accordingly, there is no basis for revisiting the court's prior determination that the proof offered by the State on its renewal motion was sufficient to meet its burden under CPLR 3215 (f).

---

3. Of course, a meritorious defense alone is not enough. Vacatur under CPLR 5015 (a) (1) also requires a reasonable excuse for the default. Here, the Third Department's decision conclusively establishes that Guerrera's lack of a reasonable excuse for its default is fatal to an application to vacate the default judgment under the cited statute (*see* 44 AD3d at 1151).

And even if the court were to consider the "new facts" relied upon by Guerrera and revisit the CPLR 3215 (f) analysis on the basis of the enlarged factual record presented by this application, the court's prior determination would not be altered. In arguing that the State failed to meet its burden under CPLR 3215 (f), Guerrera contends that its new evidence demonstrates that Mr. DeCicco's "hearsay adoption of conclusory expert conclusions that had no factual or scientific basis [presents] nothing more than speculation that Guerrera, or other defendants, might possibly have liability for petroleum contamination at the Site."

■ However, Mr. DeCicco's affidavit clearly discloses that he relied upon the attached tank closure report in formulating his opinion that the overfilling of storage tanks contributed to the petroleum contamination at the spill site. In addition to his averment that he relied upon the official reports and records of DEC relating to the investigation, remediation, cleanup and removal of the reported petroleum discharge at spill site, Mr. DeCicco even cites to the attached tank closure report in setting forth the factual basis for his opinions regarding Guerrera's liability. While Mr. DeCicco also avers that his affidavit is based on personal knowledge acquired as a result of his involvement in the investigation and remediation at the spill site, the undisputed proof demonstrates that Mr. DeCicco had in fact supervised the remediation project for approximately 4½ years, personally managed the project for more than two years immediately prior to executing his affidavit, and inspected the spill site on several occasions to review the status of the remediation work.

Moreover, Mr. DeCicco does not claim that his opinions regarding the overfilling of the petroleum storage tanks were based on his direct observation of Guerrera personnel performing their duties or some other similar form of personal knowledge. Rather, Mr. DeCicco offered his expert opinion on the basis of his professional education, training and experience in investigating petroleum discharges, together with the reasonable and plausible inferences flowing from the undisputed fact that Guerrera delivered petroleum products to the spill site for many years and the circumstantial proof, detailed in the tank closure report, tending to demonstrate that at least a portion of the subject contamination resulted from overfilling the storage tanks during petroleum deliveries. And in formulating his opinions, Mr. DeCicco was in a position to assess the reliability

of the tank closure report and he necessarily determined, in the exercise of his professional judgment, that the report by DEC's engineering consultant was sufficiently reliable.

■ The new proof offered by Guerrera does not negate the proof relied upon by the State or leave it devoid of probative value. Guerrera's motion simply points out that, as in most every case, there are at least two sides to every story. But CPLR 3215 (f) requires only some prima facie demonstration of a viable cause of action, not factual certainty. Thus, it is of no moment in the CPLR 3215 (f) analysis that the soil samples relied upon by the State "might or might not" have been taken from above the storage tanks, that the State's proof did not definitively rule out other sources of petroleum contamination and did not analyze the specific petroleum contaminants found in the soil, that the State failed to demonstrate the proper calibration of the hydrocarbon detectors it relied upon to detect petroleum contaminants, or that there may be certain discrepancies in the stains on the storage tanks or other plausible explanations for this staining. While these might all be worthy issues for cross-examination at trial, as a defaulting defendant, Guerrera must be deemed to have admitted the traversable allegations of the complaint; the issue under CPLR 3215 (f) is limited to whether the State has provided some nonhearsay confirmation of its claims. The court concludes that it has.

Further, it is apparent that many of the alleged shortcomings now raised by Guerrera are discernable from the LBG tank closure report, which was attached to the State's motion papers and expressly relied upon by Mr. DeCicco in his affidavit. A motion for renewal "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [3]). Guerrera has not provided an excuse, much less a reasonable excuse, for failing to raise deficiencies discernable from the face of the tank closure report in the prior motion practice.

For similar reasons, the court is not persuaded that the deposition transcripts of defendant Quante or nonparty witness Clarence MacFadden, a former employee of Quante, represent cognizable new evidence. In addition to being self-serving and somewhat inconsistent with respect to the issue of overfilling, there is no showing that the statements of these witnesses could not have been procured with reasonable diligence so as to have been available to the court on the prior motion practice. And, again, while this proof might be helpful to a trier of fact, the existence of factual conflicts regarding Guerrera's liability does

not negate the proof relied upon by the State in support of a default judgment.

Finally, Guerrera has shown no basis for vacating the default judgment pursuant to CPLR 5015. As explained previously, Guerrera's lack of reasonable excuse for the default is fatal to any application pursuant to CPLR 5015 (a) (1). And the court agrees with the State that CPLR 5015 (a) (2), which deals with newly discovered evidence that probably would have changed the result at trial, is not applicable to a default judgment entered pursuant to CPLR 3215.[4] Nor is this a case where the State procured a default judgment through fraud or misconduct (CPLR 5015 [a] [3]). Finally, while the court recognizes its inherent power to set aside a judgment, Guerrera does not seek such relief and, in any event, the court finds that this is not an appropriate case in which to exercise this extraordinary power.

Conclusion

Accordingly, it is ordered that defendant R.J. Guerrera's motion for renewal is denied in its entirety.

---

4. Moreover, the court finds that the bulk of the evidence relied upon by Guerrera could have been discovered with reasonable diligence on the prior motion practice and that such evidence would have merely impeached Mr. De-Cicco's testimony.