OPINION OF THE COURT
Philip S. Straniere, J.
Plaintiff, Collins Financial Services, Inc. (Collins Financial), had commenced this consumer credit transaction against the defendant, Helen Vigilante, alleging that the defendant failed to pay charges incurred pursuant to a consumer credit agreement. In the summons and complaint, Collins Financial alleged that it was the assignee of the defendant’s account pursuant to an assignment from American Investment Bank, N.A.
The action was commenced by filing a summons and complaint with the clerk of the court on February 14, 2008. To its credit, on May 22, 2008, counsel for plaintiff forwarded to the court a letter from a relative of the defendant that counsel had received which indicated that the defendant was 91 years old, deaf, blind and living on Social Security. Counsel for plaintiff asked the clerk to treat the letter as an answer from the defendant. The matter appeared on the Part 11 calendar on June 10, 2008. The defendant did not appear on that date and the matter was marked “inquest clerk.” On October 14, 2008, plaintiff prepared a judgment form and an “affidavit of facts” from the “Custodian of Records” of the plaintiff which was received by the court on October 24, 2008. The clerk of the court on October 30, 2008 rejected the judgment with the notation that the “plaintiff name on judgment does not [sic] summons.” Clearly the word “match” was omitted.
A review of the file indicates that the rejection notice from the clerk is not correct. The plaintiff on the summons and *910 complaint is “Collins Financial Services, Inc., assignee in interest to American Investment Bank, N.A.” The same names appear on the judgment. There is no indication that the plaintiff resubmitted the judgment; however, the court file discloses that a judgment was entered in favor of plaintiff against this defendant on November 26, 2008. Perhaps the clerk in reviewing the file realized there was no defect in the pleadings.
Legal Issues Presented:
A. May the November 26, 2008 Judgment be Assigned?
Currently before the court is an application by Collins Financial to assign the November 26, 2008 judgment to Precision Recovery Analytics, Inc.
Civil Practice Law and Rules § 3215 provides:
“Default Judgment
“(a) Default and entry. When a defendant has failed to appear, plead or proceed to trial of an action reached and called for trial, or when the court orders a dismissal for any other neglect to proceed, the plaintiff may seek a default judgment against him.[*] If the plaintiffs claim is for a sum certain or for a sum which can by computation be made certain, application may be made to the clerk within one year after the default. The clerk, upon submission of the requisite proof, shall enter judgment for the amount demanded in the complaint or stated in the notice served pursuant to subdivision (b) of rule 305, plus costs and interests . . .Where the case is not one in which the clerk can enter judgment, the plaintiff shall apply to the court for judgment.”
Since January 2000, in order to enter a default judgment in Civil Court, the plaintiff must submit an affidavit of facts from a party to the action. A complaint verified by an attorney for the plaintiff is not sufficient to enter a default judgment unless the attorney submits an additional affirmation in that regard specifically acknowledging he or she has personal knowledge of the facts.
As a result of a directive from the Deputy Chief Administrative Judge, effective May 2009, when a third party other than the original lender is seeking to enter a default judgment, an affidavit of sale of the account by the original creditor is needed. If the debt is sold to another third-party debt collector, an ad *911 ditional affidavit by that debt seller is required. Further, an affidavit is required by the plaintiff, setting forth the chain of title of the sold account. By another directive in May 2009, no default judgment may be entered unless accompanied by an affidavit from the debt collector or the attorney stating that after reasonable inquiry, he or she has reason to believe that the statute of limitations has not expired. This affidavit is required for a debt collector to be in compliance with the Fair Debt Collection Practices Act (FDCPA).
The original assignment from American Investment Bank to Collins Financial was in 2008, prior to the institution of the May 2009 directives. The current assignment from Collins Financial to Precision Recovery Analytics, Inc. is from October 2010 and subject to the new requirements. Although the directives are designed to apply when a plaintiff initially seeks to enter a default judgment, due process requires certain information be presented to the court by any assignor seeking to assign a judgment; at minimum an affidavit setting forth the chain of assignments is necessary.
A review of the original documents submitted by Collins Financial to obtain the default judgment reveals that there was insufficient documentation to permit the entry of the judgment in November 2008. The “affidavit of facts” is not from someone with personal knowledge of the facts. It is from the “Custodian of Records” of Collins Financial and is made based only upon “information.” It does not state when the alleged contract was made between the original creditor and the defendant, nor does it indicate the date the last payment was made. Further, the affidavit is only notarized and not acknowledged. As it is a notarization from Texas, a certificate of conformity is also required. This certificate is lacking as well.
Notice of the assignment must also be given to the debtor. There is no evidence that either the assignor or the assignee has given such notice. The rules of this court require the notice of assignment be given by the assignor and not the assignee. The credit card holder had his or her agreement with the credit card issuer and not with the unknown third-party debt purchaser so that receipt of the notice from the third-party debt purchaser does not satisfy due process standards. Without receiving such notice of the assignment, a debtor seeking to make an application to the court would not have any idea as to which creditor is to be served. Further, requiring the assignor to give notice of the assignment and to include a chain of title of *912 the sold account helps to prevent unscrupulous parties from searching the judgment records of the court and notifying debtors that payments should be made to the third party rather than to the legitimate creditor or assignee.
For all of these reasons, the assignment of judgment from Collins Financial to Precision Recovery Analytics, Inc. must be rejected and the underlying judgment vacated.
B. Is the Original Claim for a “Sum Certain”?
There is another issue that permeates the entire practice of entering a default judgment against a non-answering defendant as well as having judgments entered by the clerk after a defendant fails to appear on a return date and the calendar is marked “inquest clerk.” A default in appearing and answering by a defendant is generally held to be a default only as to the issue of liability. It is not an admission by the defendant that the amount claimed due and owing is correct. This being the case, the plaintiff is required to prove damages and a defendant may appear at a hearing to assess damages and contest the amount claimed due. The court rules have long permitted judgments to be entered on default without the necessity of a hearing or review by the court where the amount claimed due is a “sum certain.”
“A defendant’s default does not, however, give rise to a ‘mandatory ministerial duty to enter a default judgment against it’ (Gagen v Kipany Prods., 289 AD2d 844, 846 [2001]). Rather, a plaintiff must support its motion for a default judgment with ‘enough facts to enable [the clerk or the] court to determine that a viable cause of action exists’ (Woodson v Mendon Leasing Corp., 100 NY2d 62, 71 [2003]). Moreover, where application is made to the clerk, i.e., in cases where the claim is ‘for a sum certain or for a sum which can by computation be made certain,’ entry of a judgment by the clerk is authorized only where there can be no reasonable question about the amount of the judgment (see Weinstein-KornMiller, NY Civ Prac ¶ 3215.04 [2d ed]), such as actions upon money judgments or negotiable instruments (see Reynolds Sec. v Underwriters Bank & Trust Co., 44 NY2d 568 [1978]). Even where a viable cause of action exists, if the damages sought cannot be readily ascertained without resort to extrinsic proof, entry of judgment by the clerk is improper (id. at 573) . . . Accordingly, the damages *913 sought by the plaintiff were not readily ascertainable with resort to extrinsic evident, and it was therefore error for the clerk to enter a default judgment.” (PDQ Aluminum Prods. Corp. v Smith, 20 Misc 3d 94, 96-97 [2008].)
As set forth above, CPLR 3215 (a) only permits such a practice when the “claim is for a sum certain or for a sum which can by computation be made certain.” The statute goes on to permit the entry of a judgment by the clerk “upon the submission of the requisite proof.” What is to be included in the “requisite proof’ is set forth in CPLR 3215 (f). There is little guidance as to what documentation is to be included in the affidavit of a party so that there is sufficient “proof of the facts constituting the claim” to support entry of such a judgment. (Id.) The current practice is to accept the entry of these judgments based on an “affidavit of facts” from a person having “personal knowledge” of the facts. There is no specification of the documentation required to support the allegations in the affidavit of facts or to verify how the amount due and owing is calculated. This practice and procedure may have made sense when default judgments were sought to be entered for a failure to pay on a promissory note or other negotiable instrument or for breach of contract where the pleadings and the affidavit of facts would permit the defendant or the clerk examining the file to calculate the amount due. Such a system is not tolerable in regard to credit card and other consumer credit debt cases where items such as the interest rate, late payment charge, and over-the-limit fees may change several times over the course of the consumer credit agreement. The modifications are often triggered by the card issuer allegedly mailing a notice of the alteration of the terms and the card holder using the credit card after the notice date.
The only statutory definition of a “sum certain” appears in article 3 of the Uniform Commercial Code in regard to “commercial paper.” Consumer credit debt does not qualify as “commercial paper” under that statute (Smith v Palasades Collections LLC, 2007 WL 1039198, 2007 US Dist LEXIS 28348 [ND Ohio 2007]; Citibank [SD] N.A. v C & S Wholesale Grocers, Inc., 2009 WL 688991, 2009 US Dist LEXIS 20195 [D Vt 2009]), but UCC 3-106 does set forth standards to be applied in determining whether an amount claimed due is a “sum certain” for the purpose of determining whether an “instrument” is a “negotiable instrument” (UCC 3-102).
*914 “Sum certain
“(1) The sum payable is a sum certain even though it is to be paid
“(a) with a stated rate of interest or by stated installments; or
“(b) with stated different rates of interest before
and after default or a specified date; or
“(c) with a stated discount or addition if paid before or after the date fixed for payment; or
“(d) with exchange or less exchange, whether at a fixed rate or at the current rate; or
“(e) with costs of collection or an attorney’s fee or both upon default.
“(2) For the purposes of subsection one of this section ‘a stated rate of interest’ shall also include a rate of interest that cannot be calculated by looking only to the instrument but which is readily ascertainable by a reference in the instrument to a published statute, regulation, rule of court, generally accepted commercial of financial index, compendium of interest rates, or announced rate of a named financial institution.
“(3) Nothing in this section shall validate any term which is otherwise illegal.” (UCC 3-106.)
If these standards were to be applied to consumer credit debt, most money owed pursuant to a consumer credit agreement would qualify as a “sum certain” even though the interest rate fluctuates according to an index stated in another document specified in the agreement and there is a different interest rate after default. Based on the nature of consumer credit debt, due process requires, at a minimum, that in order to utilize such rates in calculating the amount owed, the agreement between the card issuer and card holder containing that rate must be presented as an exhibit or recited in sufficient detail in the “affidavit of facts” so that either the clerk or the court may determine if the amount claimed owed is properly calculated. Merely pleading an amount due and owing without reference to how that number was calculated is a failure of proof that the alleged damages qualify as a “sum certain.” Again it should be pointed out that this section of the UCC is relied on to determine if an instrument is a “negotiable instrument” under the code. It is not a rule of evidence. In consumer credit transactions the court is dealing with the sufficiency of evidence to es *915 tablish that the amount claimed due is a “sum certain.” This is a different standard.
The typical plaintiff’s complaint in these consumer credit transactions routinely only pleads an amount due and owing which, upon the default of the defendant, the plaintiff is asserting is a “sum certain.” In reality, the amount due pleaded in the complaint is a compilation of many things including items purchased by the consumer or cash advances taken along with a fluctuating interest rate calculated on a per diem basis and tied into some index presumably set forth in the agreement with the debtor but never specified or disclosed in the pleading or subsequent documents submitted to the court in an attempt to obtain a default judgment. It is the practice of the consumer credit industry for the interest rate to change to a higher default rate once the defendant is late with or fails to make a scheduled payment. The agreement also may have had an introductory artificially low “teaser” rate to induce the debtor to use the credit card, which after a set period of time automatically increased. Added to this alleged amount claimed due are late and over-the-limit fees which may also fluctuate. None of these facts are pleaded in the complaint, making it impossible for anyone to determine if the amount being sued for is in fact correct. Thereby, the very nature of the obligation allegedly incurred cannot by computation be made certain.
Based on the experience in this court that creditors, especially third-party debt purchasers, often cannot prevail on summary judgment motions owing to a lack of evidence coupled with their failure to either proceed to trial on consumer credit cases or be successful at trial owing to a lack of admissible evidence, the court can no longer tolerate a system of entering default and “inquest clerk” judgments without requiring substantially greater documentation from plaintiffs claiming the amount due and owing is a “sum certain.” The amount being sought in these consumer credit transactions can no longer be determined from the “four corners of the instrument.” Neither the debtor, the court clerk nor a judge can verify the validity of the amount claimed due based solely on unsubstantiated numbers in a complaint or affidavit of facts. The documentation submitted in this case, and in almost all applications for a default judgment in consumer credit cases, fails to provide the necessary “requisite proof’ to support entry of judgment pursuant to CPLR 3215 (a).
Therefore, in order for a plaintiff to enter a default judgment or judgment after “inquest” the following information must be *916 included in every affidavit of facts so as to constitute requisite proof:
1. The date the consumer credit agreement was entered into by the defendant;
2. The name of the original creditor;
3. A complete history of the assignment of the account;
4. The date of the last payment by the defendant;
5. The amount of the last payment by the defendant;
6. The last date a purchase or a cash advance was made by the defendant;
7. The original credit card number and if the account number was changed during the period the card was in use, a history of the account numbers;
8. The outstanding balance on the date of the last payment;
9. A calculation of the outstanding balance on the date of the last payment setting forth the amount of purchases, the interest charged, and late, over-the-limit and other fees assessed;
10. A statement of how the interest rate was calculated along with copies of all documents which made changes to the consumer credit agreement, and if there were changes in the interest rate and fees charged, copies of the documentation to support such changes;
11. A statement that the address for the defendant set forth in the summons and complaint is the current address of the defendant and that a good faith effort was made to determine a current address for the defendant; and
12. Copies of all extrinsic documents referred to in the consumer credit agreement, and if an extrinsic index was used to calculate the interest rate, proof of the rate in that index on the date calculation was made.
The plaintiff herein was not entitled to a default judgment owing to the absence of proof of how the amount due and owing was calculated. The judgment is vacated. However, the plaintiff may reinstate the judgment by seeking either an “inquest on papers,” as provided for under the court rules and submission of the suggested documentation set forth above, or an “inquest before the court,” by bringing in a witness to explain how the amount due and owing was calculated.
The underlying judgment is vacated.

* The Legislature has not amended this statute to be gender neutral.