■ JANE H. GOLDMAN et al., as Executors of SOL GOLDMAN, Deceased, Appellants, v JAMES COTTER et al., Respondents. JUDITH BRENER, ESQ., Nonparty Appellant. [781 NYS2d 28]—

Order, Supreme Court, New York County (Louis B. York, J.), entered April 30, 2003, which, inter alia, denied plaintiffs-appellants' motion to vacate an order entered on default on or about November 21, 2002, confirming the report of a Special Referee which recommended an award in favor of defendants-respondents on their first and second counterclaims in the amount of $59,583 and imposed sanctions against plaintiffs' attorney, unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, the motion granted and the November 21, 2002 order and ensuing judgment, entered March 17, 2003, vacated on condition that plaintiffs-appellants pay $3,000 to counsel for defendants within 30 days of service of a copy of this order with notice of entry.

This appeal arises out of plaintiff executors' efforts, in their capacity as landlord, to deny a renewal lease to defendant James Cotter, Jr., purportedly the rent-stabilized tenant of an apartment building located at 20 Fifth Avenue in Manhattan. In 1998, plaintiffs sent defendants Cotter, Jr. and his father, defendant James Cotter, Sr., a notice of nonrenewal and commenced a Civil Court proceeding (Civil Court action) against them to regain possession of the apartment upon the ground of nonprimary residence. The proceeding was dismissed by Civil Court upon defendants' motion in February 1999.

Thereafter, defendants brought a proceeding before the New York State Division of Housing and Community Renewal (DHCR proceeding) seeking an order directing plaintiffs to provide them with a renewal lease, which was eventually resolved in the Cot-

ters' favor. Plaintiffs did not appeal either the dismissal of the Civil Court action or the DHCR determination.

In June 1999, plaintiffs commenced the instant action in Supreme Court (Supreme Court action) against both Cotters to rescind the lease and for other relief based on the allegation that Cotter, Sr. had fraudulently obtained the rent-stabilized lease by falsely representing that he would occupy it, when, in fact, it was his intention that his son would reside there. Defendants' answer denied the allegations in the complaint and asserted the affirmative defense of collateral estoppel. Defendants alleged that Cotter, Jr.'s rights as the rent-stabilized tenant of the subject apartment were previously determined by the February 1999 dismissal of plaintiffs' Civil Court action and the DHCR determination. Defendants further asserted counterclaims for legal fees, costs and sanctions pursuant to Real Property Law § 234 (first counterclaim) and subpart 130-1 of the Rules of the Chief Administrator of the Courts (22 NYCRR) (second counterclaim).

In March 2000, defendants moved for summary judgment on their first and second counterclaims, and for dismissal of the complaint. In an August 15, 2000 order, Supreme Court granted dismissal of the complaint on collateral estoppel grounds, noting that plaintiffs had not appealed the adverse findings in the Civil Court action and DHCR proceeding. In view of these prior proceedings, the court deemed plaintiffs' present action frivolous and held that attorneys' fees and sanctions were appropriate. The court referred the matter to a Special Referee for a hearing to determine the amount.

Following a hearing, the Special Referee issued a report finding that (1) defendant Cotter, an attorney, was entitled to an award of attorneys' fees for work he performed himself in the amount of $14,490; (2) Cotter was entitled to $6,617 for finance charges on his credit card allegedly incurred as a result of his having to pay his attorneys to defend plaintiffs' actions; (3) Cotter's attorneys were entitled to an award of $38,476 for work performed; and (4) sanctions of $5,000 should be imposed against plaintiffs' counsel.

Defendants moved to confirm the report. However, plaintiffs never responded to the motion. Accordingly, in a November 21, 2002 order, the court granted defendants' motion to confirm on default. Defendants served plaintiffs' counsel with a copy of this order, together with notice of entry, on or about November 22, 2002. The order was reduced to a judgment, entered March 17, 2003, which awarded the sums recommended in the Referee's report and noted that plaintiffs had defaulted on the motion to confirm.

On April 2, 2003, plaintiffs moved by order to show cause to, inter alia, resettle the judgment and to vacate the November 21, 2002 order entered on default. Plaintiffs did not specifically move to vacate the judgment. Supreme Court denied the motion to resettle the judgment as unnecessary, and found plaintiffs' additional arguments to be "without merit."

On appeal, plaintiffs argue that the court erred in refusing to vacate the November 21, 2002 order and the March 17, 2003 judgment, both entered on default, since a reasonable excuse for the default and a meritorious defense have been shown. As we find that Supreme Court improvidently exercised its discretion in denying plaintiffs' motion to vacate its default, we reverse.

A party seeking relief from an order or judgment on the basis of excusable default pursuant to CPLR 5015 (a) (1) must provide a reasonable excuse for the failure to appear and demonstrate the merit of the cause of action or defense (*see Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co.*, 67 NY2d 138, 141 [1986]; *Navarro v A. Trenkman Estate, Inc.*, 279 AD2d 257, 258 [2001]; *Mediavilla v Gurman*, 272 AD2d 146, 148 [2000]). The determination of the sufficiency of the proffered excuse and the statement of merits rests within the sound discretion of the court (*Navarro v A. Trenkman Estate, Inc.*, 279 AD2d at 258).

In support of the motion to vacate their default, plaintiffs submitted an affidavit of their counsel stating that she prepared opposition papers to defendants' motion to confirm the Referee's report and delegated the responsibility for their filing and service to a paralegal formerly employed by the firm. However, due to this paralegal's misconduct and failure to fulfill his professional duties, the opposition papers were never filed or served on defendants. This Court, under similar circumstances, has previously held that the defalcations of a law firm employee which result in a default may constitute excusable law office failure (*see id.* [office manager's wrongful acts, including failure to file papers, constituted valid excuse for plaintiff's failure to appear]; *Polir Constr., Inc. v Etingin*, 297 AD2d 509, 513 [2002] [replacement of associates at plaintiff's counsel's law firm was excusable law office failure]; *Solowij v Otis El. Co.*, 260 AD2d 226, 226-227 [1999] [misconduct of former paralegal in plaintiff's counsel's law firm was reasonable excuse for plaintiff's defaults]).

In addition, the facts strongly suggest that plaintiffs had no intention of abandoning their defense of defendants' counterclaims. Plaintiffs participated in the proceedings before the Special Referee, opposing defendants' application for costs, attorneys' fees and sanctions. Moreover, immediately prior to

defaulting, plaintiffs requested and received an extension of time to file papers in opposition to defendants' motion to confirm the report. It is highly doubtful that plaintiffs would simply quit on the case at this juncture, where a substantial award against them had been submitted to the court for approval. Indeed, plaintiffs' counsel alleges that she was completely unaware of the default until after the judgment was entered and restraining notices filed in March 2003.

While defendants respond that plaintiffs must have been aware of the default much earlier since the order granting the motion to confirm on default was served on plaintiffs' counsel in November 2002, four months before the entry of judgment, plaintiffs' counsel denies such knowledge and points out that the offending paralegal was still employed at the firm in November 2002, when the service of such default order occurred. Under these circumstances, plaintiffs have shown a strong likelihood that the incriminating default order may have met a fate similar to that of the unfiled opposition papers at the hands of this former employee.

Plaintiffs have also made a strong showing of the merits of their defense to defendants' counterclaims for costs, attorneys' fees and sanctions. The $14,490 fee award to defendant Cotter, Jr. for legal work performed on his own behalf is troublesome, given that his counsel was also awarded substantial fees and Cotter, Jr. admitted that the work he performed was outside the direction of said counsel. In addition, the $6,617 award to Cotter, Jr. for finance charges allegedly incurred as a result of his expenditures of legal fees would only be appropriate if a clear showing is made that the use of credit "was the only avenue open" to Cotter, Jr. (cf. Poulos v Badala, 227 AD2d 118, 119 [1996]), and plaintiffs should have the opportunity to submit opposition on this point. Legitimate questions also exist as to whether attorneys' fees for the Civil Court action were properly awarded in this action, given Supreme Court's statements on the record to the contrary, and whether sanctions against plaintiffs' counsel were appropriate under the circumstances herein.

Lastly, defendants' argument that plaintiffs' failure to move to vacate the March 2003 judgment precludes its vacatur is rejected. Although plaintiffs should have moved to vacate both the November 2002 order and the ensuing March 2003 judgment, both granted on default, a grant of relief on the former would clearly render the judgment a nullity. This Court has discretion to disregard the technical defect and deem the motion to vacate the default order as one to vacate the ensuing

judgment as well (*see Echevarria v Bank*, 111 AD2d 781, 781 [1985] [although no motion made to vacate plaintiff's default in moving to restore case to calendar, Appellate Division may disregard this "technical defect" and consider motion as one to vacate underlying judgment dismissing complaint]; *see also City of Mount Vernon v Mount Vernon Hous. Auth.*, 235 AD2d 516, 517 [1997] [on rare occasions, an appellate court may review and alter provisions of an order and judgment that are not described in a limited notice of appeal where subject of limited appeal is "inextricably intertwined" with those that are not]).

Moreover, as the Court of Appeals has recently reaffirmed, the drafters of CPLR 5015 did not envision that such section would provide an exhaustive list of the grounds for vacatur (*see Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68 [2003]). Rather, a court would retain its discretionary power to "vacate its own judgment for sufficient reason and in the interests of substantial justice" (*id.*; *see also Ladd v Stevenson*, 112 NY 325, 332 [1889]; 10 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 5015, 5015.12).

However, in light of the litigation necessitated by plaintiffs' default, we condition the reversal upon payment of $3,000 to defendants' attorneys. Concur—Nardelli, J.P., Lerner, Friedman, Marlow and Gonzalez, JJ.