■ JOHN BRADBURY, Respondent-Appellant, v 342 WEST 30TH STREET CORP., Appellant-Respondent. [924 NYS2d 349]—

Order and judgment (denominated an order), Supreme Court, New York County (Emily Jane Goodman, J.), entered May 12, 2009, after a nonjury trial, to the extent appealed from, declaring that the subject apartment was rent stabilized, that the legal monthly rent chargeable to plaintiff in January 2002 was $1,390.87 per month and that defendant had willfully overcharged plaintiff, and directing the entry of a money judgment in plaintiff's favor in the amount of $58,476.48, representing rent overcharges and treble damages, plus interest, costs and disbursements, unanimously modified, on the law, to declare that the legal monthly rent chargeable to plaintiff in January 2002 was $402.43, the amount of the money judgment vacated, and the matter remanded for recalculation of the money judgment consistent with this opinion, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered January 18, 2010, which denied plaintiff's motion to resettle or reargue the May 12, 2009 order and judgment, unanimously dismissed, without costs, as taken from a nonappealable paper.

In or about April 2001, Dolce Sosa, the former tenant, moved out of apartment 5R at 346 West 30th Street in Manhattan. At the time her tenancy ended, she was paying $402.43 per month under a rent-stabilized lease. On December 24, 2001, plaintiff tenant and defendant landlord entered into a lease for the apartment. The lease term began on January 1, 2002 and ended on December 31, 2003, and the monthly rent was $2,000. Plaintiff was not informed that the apartment was rent stabilized, nor did the lease include a rent stabilization rider.

Records from the Division of Housing and Community Renewal (DHCR) show that the rent registration statement for the former tenant, filed in 2001, listed a legal regulated rent of $402.43 as of April 1 of that year. In 2002 and 2003, plaintiff was sent annual rent registration notices stating that the legal regulated rent for the apartment, as of April 1 of each of those years, was $2,000 per month. The DHCR records confirm that defendant registered the apartment as rent stabilized in both 2002 and 2003 at a monthly rent of $2,000. The records do not reflect whether defendant filed any subsequent rent registration statements.

In December 2003, plaintiff commenced this action alleging that defendant had willfully overcharged him an amount above the legal regulated rent. Plaintiff sought a judgment declaring that the apartment was subject to rent stabilization and that his legal regulated rent was to be calculated on the basis of the previous regulated rent of $402.43 per month. Plaintiff also sought a judgment for treble damages for a willful overcharge. Defendant claimed that, after the former tenant vacated the apartment and before plaintiff's tenancy began, defendant spent at least $90,000 to renovate the apartment. Defendant maintained that as a result of these improvements, along with other permissible increases, the lawful monthly rent was in excess of $2,000, which allowed for luxury decontrol of the apartment and removal from rent stabilization.

The matter went to trial, and in a decision dated November 29, 2007, the court determined that the apartment was subject to the Rent Stabilization Law. The court found that the testimony of defendant's principal, Anthony Argento, was "unbelievable in all material matters" and "unworthy of belief." The court also rejected most of the other defense witnesses' testimony, finding that two of them had lied on the stand. The court concluded that bills and invoices were fabricated for the litigation and that at least one forged document was submitted to the court. In sum, the court stated that defendant's case was "a sham, filled with perjury, forgery, [and] fabrications all designed not only to raise the rent of the apartment . . . to an unlawful level, but to mislead the plaintiff, counsel and the Court." The court rejected defendant's claimed renovation costs of $90,000 and found instead that defendant had spent no more than $34,000. The court also found that plaintiff's unlawful $2,000 rent was imposed willfully and intentionally.

By order and judgment entered May 12, 2009, the court declared that the last lawful rent was $402.43 in 2001. The court then calculated that defendant was entitled to an $80.49

vacancy increase, a $57.95 longevity increase and a renovations increase of $850 (1/40 of the $34,000 renovations cost) and that therefore the legal monthly rent chargeable to plaintiff at the start of his tenancy in January 2002 was $1,390.87. The court found that, since this amount did not exceed $2,000, the apartment was still subject to rent stabilization. The court concluded that defendant had overcharged plaintiff by $609.13 per month (the difference between $1,390.87, the rent found by the court, and $2,000, the rent plaintiff had paid) for a total overcharge of $20,101.29. The court also concluded that the overcharge was willful and intentional, entitling plaintiff to treble damages, for a total of $58,476.48. Both parties appeal from the May 12, 2009 order and judgment.

Defendant failed to meet its burden of proving the cost of the renovations made to the apartment to justify the rent it charged plaintiff (*see Matter of Graham Ct. Owners Corp. v Division of Hous. & Community Renewal*, 71 AD3d 515 [2010]). The trial court's determination that defendant spent no more than $34,000 in renovations is supported by a fair interpretation of the evidence. Defendant's witnesses and documents presented credibility issues, and the record sufficiently supports the trial court's resolution of those issues in plaintiff's favor. Defendant also failed to establish that the rent overcharges were not willful so as to avoid treble damages (9 NYCRR 2526.1 [a] [1]; *Matter of Riverside Equities, LLC v New York State Div. of Hous. & Community Renewal*, 58 AD3d 534 [2009], *lv denied* 13 NY3d 709 [2009]).

Although the trial court correctly calculated the amount of the vacancy, longevity and renovations increases that defendant would otherwise have been entitled to, we nevertheless conclude that defendant's intentional filing of two knowingly false rent registration statements was not a "proper" filing as required by section 26-517 (e) of the Rent Stabilization Law of 1969 (Administrative Code of City of NY) and bars defendant in this case from collecting any rent in excess of the legal regulated rent in effect as of the date of the last preceding rent registration statement (*id.*).

Owners of rent-stabilized apartments are required to file annual rent registration statements with DHCR listing, among other things, the name of the tenant in each regulated apartment along with the current rent on the registration date (*see* Administrative Code § 26-517 [a], [f]; Rent Stabilization Code [9 NYCRR] § 2528.3). An owner's failure to file a "proper and timely" annual rent registration statement bars the owner from collecting "any rent in excess of the legal regulated rent in ef-

fect on the date of the last preceding registration statement" until such time as a proper registration is filed (Administrative Code § 26-517 [e]; *see also* 9 NYCRR 2528.4 [a]). Where an owner fails to file a "proper and timely" registration, until such registration is filed, the rent is frozen at the legal regulated rent listed in the preceding registration statement (*see Jazilek v Abart Holdings, LLC*, 72 AD3d 529, 531 [2010]).

Here, although defendant filed rent registration statements in 2002 and 2003 listing the purported legal regulated rent as $2,000, the trial court's findings, which we now affirm, establish that those filings were intentionally false. The trial court concluded that defendant willfully and intentionally charged plaintiff the incorrect rent of $2,000 and that the maximum allowable rent was $1,390.87. The court further found that defendant's entire case was "a sham, filled with perjury, forgery, [and] fabrications" and was "designed . . . to raise the rent of the apartment . . . to an unlawful level," a level that would remove the unit from the protections of rent stabilization.

In light of these findings, we conclude that defendant's 2002 and 2003 DHCR filings were not "proper" within the meaning of Administrative Code § 26-517 (e). This Court recently upheld the imposition of a rent freeze in a similar situation (*see Jazilek v Abart Holdings, LLC*, 72 AD3d 529 [2010], *supra* [rent registration statement listing a legal rent in excess of the highest possible legal rent was defective and not a "proper" filing]; *see also Thornton v Baron*, 5 NY3d 175, 181 [2005] [rent registration statement listing illegal rent was a nullity]). Because defendant failed to file proper statements in 2002 and 2003, and because the record does not show that any such proper statements were subsequently filed, defendant was barred from collecting any rent in excess of the last properly registered rent, i.e., the $402.43 rent listed in the 2001 registration. Accordingly, the matter should be remanded for a recalculation of the amount of the money judgment.

The court's order denying plaintiff's motion to resettle or reargue is not appealable (*Parker v Marglin*, 56 AD3d 374, 374-375 [2008]; *Kubick v Kubick*, 261 AD2d 300 [1999]).

We have considered the parties' remaining contentions and find them without merit. Concur—Mazzarelli, J.P., Acosta, DeGrasse, Richter and Manzanet-Daniels, JJ.