125 Court Street, LLC, Respondent,
against
Yolande Nicholson, Appellant, et al., Undertenants. 




Yolande Nicholson, appellant pro se.
Leon I. Behar, P.C. (Leon I. Behar of counsel), for respondent.

Appeal from an order of the Civil Court of the City of New York, Kings County (Leslie A. Stroth, J.), entered April 18, 2018. The order denied the branch of tenant's motion seeking, in effect, leave to renew her prior motion to vacate two so-ordered stipulations of settlement and a final judgment of that court (Anthony J. Fiorella, Jr., J.) entered pursuant thereto on June 10, 2010, which prior motion had been denied in an order of that court (Anthony J. Fiorella, Jr., J.) entered May 20, 2011, and, upon renewal, to grant her prior motion, and, upon such vacatur, to dismiss the petition, to restore tenant to possession and for an award of attorney's fees, in a holdover summary proceeding.




ORDERED that the order entered April 18, 2018 is modified by providing that the branch of tenant's motion seeking leave to renew her prior motion is granted and, upon renewal, the branches of the prior motion seeking to vacate the two stipulations of settlement and the final judgment are granted, upon such vacatur, the branch of the motion seeking to dismiss the petition is granted, and the matter is remitted to the Civil Court for a determination of the branch of tenant's motion seeking to be restored to possession following the joinder of the new tenant in possession, if any; as so modified, the order entered April 18, 2018 is affirmed, without costs.
Landlord commenced this holdover proceeding in February 2010, based on a claim that tenant had failed to execute a renewal lease, which listed the new two-year legal maximum rent as $8,704.53 and the rent to be charged as $4,276. The petition alleges that the apartment is rent stabilized, that the demanded monthly rent of $4,276 is properly registered with the Department of Housing and Community Renewal (DHCR), and that tenant had failed to sign the renewal lease (see Rent Stabilization Code [RSC] [9 NYCRR] § 2524.3 [f]). On June 10, 2010, a per diem counsel acting on behalf of tenant entered into a so-ordered stipulation in which counsel admitted that tenant owed landlord $22,423.21 through June 30, 2010. The stipulation provided [*2]for a waiver of a part of this purported past rent in the amount of $9,532.18 and for tenant to surrender the apartment by September 30, 2010 and to pay use and occupancy at the rate of $3,576 per month. A final judgment was entered on June 10, 2010, pursuant to the stipulation, awarding landlord possession and the sum of $12,891.03. A second so-ordered stipulation, entered into on July 27, 2010, modified the amount due landlord, decreasing the sum by $891.03. In September 2010, tenant moved to vacate the stipulations and the final judgment, based on a claim that she had inadvertently waived her right to a postjudgment cure. By decision and order dated June 13, 2014 (44 Misc 3d 128[A], 2014 NY Slip Op 50973[U]), this court affirmed an order of the Civil Court (Anthony J. Fiorella, Jr., J.) entered May 20, 2011 which denied tenant's motion. This court's decision and order noted that dehors-the-record material attached to tenant's briefs, which included the 2009 renewal lease proffered by landlord and a letter dated June 14, 2011, had not been reviewed.
Tenant was evicted on July 14, 2014 and moved, the same day, on an emergency basis, to be restored to possession on the ground that she had not received a marshal's notice. By order dated July 16, 2014, the Civil Court (Marcia J. Sikowitz, J.), after oral argument, denied the motion, noting that tenant had been given a "$10,000" waiver of arrears.
Tenant thereafter moved, in effect, for leave to reargue or renew her prior motion to vacate the stipulations and final judgment, which motion had been determined in the order entered May 20, 2011, and, upon reargument or renewal, to grant the prior motion, and, upon such vacatur, to dismiss the petition, to be restored to possession, and for attorney's fees, alleging, among other things, newly discovered evidence and fraud. Specifically, tenant alleged that, in 2013, she had obtained from a neighbor who had made a Freedom of Information Law (FOIL) request a letter dated June 14, 2011, sent by the New York City Department of Housing Preservation and Development (HPD), Office of Development, Division of Housing Incentives, to landlord's tax attorney. The letter stated that landlord was the recipient of an RPTL 421-a tax abatement, that 256 units in the building were improperly registered with DHCR as exempt and needed to be registered as rent stabilized, and that the rents that were registered exceeded the amounts approved by HPD, which, pursuant to the abatement program, set the maximum legal rents for the building. By order dated September 19, 2014, the Civil Court (Leslie A. Stroth, J.) denied tenant's motion, on the ground that the issues raised were the same as those that had been raised in the motion which had been determined in the order dated July 16, 2014 and that the court lacked the authority to disturb the determinations of Judge Sikowitz in that order and of this court on the prior appeal.
On an appeal from, among other things, the order dated September 19, 2014, this court, in a decision and order dated September 7, 2016 (52 Misc 3d 144[A], 2016 NY Slip Op 51281[U]), found that the issues of fraud and newly discovered evidence that had been raised in support of tenant's renewal motion had not been before this court on the first appeal nor had they been raised before, or determined by, the Civil Court in the July 16, 2014 order. Consequently, this court reversed so much of the order dated September 19, 2014 as denied the branch of tenant's motion seeking leave to renew and remitted the matter to the Civil Court for a new determination of that branch of tenant's motion. Thereafter, by order entered April 18, 2018, the Civil Court (Leslie A. Stroth, J.) denied that branch of tenant's motion, finding no basis to grant leave to renew. Tenant now appeals from that order.
Pursuant to CPLR 2221, a motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination" (CPLR 2221 [e] [2]), and "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [3]; see Renna v Gullo, 19 AD3d 472, 473[2005]). "[A] court of original jurisdiction may entertain a motion to renew or vacate a prior order or judgment even after an appellate court has rendered a decision on that order or judgment" (Tishman Constr. Corp. of NY v City of New York, 280 AD2d 374, 377 [2001], citing Levitt v County of Suffolk, 166 AD2d 421, 423 [1990]), as long as the moving party meets the "heavy burden of showing due diligence in presenting the new evidence to the [lower court]" (Andrews v New York City Hous. Auth., 90 AD3d 962, 963 [2011] [internal quotation marks omitted]).
Here, the branch of tenant's motion seeking leave to renew was based on her 2013 discovery, after her receipt of the June 14, 2011 letter, that landlord had disregarded the rent stabilization laws and had claimed—in its DHCR registrations from 2005 through 2009, in the initial and renewal leases, in its petition, and, ultimately, in its representations to the Civil Court—false legal maximum rents and that it was charging tenant a "preferential rent." Tenant's receipt of the letter occurred long after she had made her original motion to vacate the stipulations and after the Civil Court had denied that motion and, indeed, the letter was even dated after the Civil Court's May 20, 2011 order. Tenant averred that she had entered into, and the Civil Court had so-ordered, the stipulations in reliance on landlord's false representations and without either tenant or the Civil Court knowing the true legal rent. Tenant's averment is uncontroverted, as landlord has submitted no affidavit during the entire course of these proceedings.
It is now undisputed that, although the petition did not so state, landlord had applied for and received an RPTL 421-a tax abatement (see 28 RCNY 6-01 et seq.), and that, pursuant to the terms of that program, tenant's apartment is subject to rent stabilization. Since tenant was the first occupant of the premises, in 2005, and the initial rent she paid was $2,933, that sum became the initial legal regulated rent and all subsequent legal rents should have been calculated from that base (see RSC § 2521.1 [g]; 125 Ct. St., LLC v Sher, 58 Misc 3d 150[A], 2018 NY Slip Op 50092[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]).[FN1]


From 2005 through 2009, landlord variously registered the apartment with DHCR as "high rent vacancy" "permanently exempt," as rent stabilized with a legal maximum rent of $8,000, and as charging tenant a "preferential rent." These registrations were false and, therefore, "a nullity" (Thornton v Baron, 5 NY3d 175, 181 [2005]). "A landlord's failure to file a proper and timely annual rent registration statement results in the rent being frozen at the level of the legal regulated rent listed in the last preceding registration statement and, therefore, bars the landlord from collecting any rent in excess of that legal regulated rent until a proper registration is filed" (Samson Mgt., LLC v Cordero, 62 Misc 3d 129[A], 2018 NY Slip Op 51879[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]; see Bradbury v 342 W. 30th St. Corp., 84 AD3d 681, 683-684 [2011]; Jazilek v Abart Holdings, LLC, 72 AD3d 529, 531 [2010]).

Accordingly, the legal maximum rent remained at the initial legal rent, $2,933, for the entire relevant period. Not only did tenant owe no arrears at the time that she entered into the stipulations, she had, in fact, overpaid. Moreover, the 2009 renewal lease that she refused to sign misstated the legal maximum rent and contained a proposed illegal rent of $4,276 (see RSC § 2523.5 [a]). Additionally, because that renewal lease failed to contain the notice that stabilization coverage would expire following the expiration of the tax benefit, tenant was entitled to the protection of rent-stabilized status for the duration of her tenancy (see Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-504 [c]; RSC § 2520.11 [o] [2]; Gersten v 56 7th Ave., LLC, 88 AD3d 189 [2011]).

The Rent Stabilization Code provides that it is "unlawful, regardless of any contract . . . for any person to demand or receive, any rent for any housing accommodation in excess of the legal regulated rent . . . in violation of any regulation . . . under the [Rent Stabilization Law] or this Code" (RSC § 2525.1). Moreover, landlord was required to correctly plead the apartment's regulatory status as subject to RPTL 421-a (see Park Props. Assoc., L.P. v Williams, 38 Misc 3d 35 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; Volunteers of Am.-Greater NY, Inc. v Almonte, 17 Misc 3d 57 [App Term, 2d Dept, 2d & 11th Jud Dists 2007], affd 65 AD3d 1155 [2009]).

Landlord's argument that the June 14, 2011 letter was not new or that it would not have changed the prior determination is unavailing. The letter is dated one month after the Civil Court's May 20, 2011 order denying tenant's motion to vacate the stipulations, and was thus not discoverable at the time the motion was made. Furthermore, the only way that tenant could have obtained the information contained in the June 14, 2011 letter was by filing a FOIL request with HPD. Landlord cites no authority for the proposition that a tenant is required to make a FOIL request, rather than rely on the truth of the publicly available registrations which a landlord is required by law to file annually with DHCR, for information about the legal status and legal rent of her apartment. On the contrary, tenant was entitled, in the first instance, to rely on the truthfulness of landlord's registrations. Moreover, while tenant's answer interposed an affirmative defense stating that the lease renewal listed a rent beyond DHCR guidelines, she did not know at that time that the information included in the registrations by landlord was false. Indeed, if tenant had had any inkling of the magnitude of the falsity of landlord's rent registrations, tenant presumably would not have agreed in the stipulations to pay landlord $12,000 and would instead have interposed a counterclaim. It was only in 2013, when tenant obtained the June 14, 2011 letter, that she understood the true nature of landlord's deceptions. In [*3]view of the foregoing, we find that the letter, which revealed landlord's false and deceptive actions, was newly discovered evidence satisfying tenant's "heavy burden of showing due diligence" to meet the requirement for granting the branch of tenant's motion for leave to renew her motion to vacate the stipulations (Andrews, 90 AD3d at 963 [internal quotation marks omitted]).

In any event, "[a] motion to renew is intended to draw the court's attention to new or additional facts which, although in existence at the time of the original motion, were unknown to the party seeking leave to renew and therefore not brought to the court's attention" (Natale v Samel & Assoc., 264 AD2d 384, 385 [1999]). "[T]his requirement is a flexible one and the court, in its discretion, may grant renewal, in the interest of justice, upon facts which were known to the movant where the movant offers a reasonable justification for failing to submit them on the earlier motion" (Gomez v Needham Capital Group, Inc.,7 AD3d 568, 569 [2004]; see Petasko v Zweig, 8 AD3d 355 [2004]; Mollin v County of Nassau, 2 AD3d 600 [2003]; Mejia v Nanni, 307 AD2d 870, 871 [2003]; Sorto v South Nassau Community Hosp., 273 AD2d 373 [2000]; but see Renna v Gullo, 19 AD3d at 473; Greene v New York City Hous. Auth., 283 AD2d 458, 459 [2001]). "[E]ven if the vigorous requirements for renewal are not met, such relief may be properly granted so as not to defeat substantive fairness" (Tishman Constr. Corp. of NY, 280 AD2d at 377 [internal quotation marks omitted]). Indeed, in light of landlord's alleged misrepresentations, it is also appropriate to grant tenant's motion for leave to renew in the interest of justice (see CPLR 5015 [a] [3]; Woodson v Mendon Leasing Corp., 100 NY2d 62, 68 [2003]; Goldman v Cotter, 10 AD3d 289 [2004]).

While a stipulation of settlement is essentially a contract and will not be lightly set aside, a stipulation may be set aside where there is proof that the stipulation was tainted by fraud, collusion, mistake or other ground sufficient to invalidate a contract (see Hallock v State of New York, 64 NY2d 224, 230 [1984]; Matter of Frutiger, 29 NY2d 143, 149-150 [1971]). In addition, courts possess the discretionary authority to relieve parties from the consequences of a stipulation "if it appears that the stipulation was entered into inadvisedly or that it would be inequitable to hold the parties to it" (Matter of Frutiger, 29 NY2d at 150 [internal quotation marks and citation omitted]; accord 1420 Concourse Corp. v Cruz, 135 AD2d 371, 373 [1987]; see Weitz v Murphy, 241 AD2d 547, 548 [1997]; Samson Mgt., LLC, 62 Misc 3d 129[A], 2018 NY Slip Op 51879[U], *2; Park Props. Assoc., L.P., 38 Misc 3d at 37).

The stipulations sought to be vacated settled this holdover proceeding, which proceeding was based on tenant's refusal to sign a renewal lease containing an illegal rent. As demonstrated above, tenant was justified in refusing to sign the renewal lease (see RSC § 2524.3 [f]; Haberman v Neumann, 2003 NY Slip Op 50031[U] [App Term, 1st Dept 2003]). Moreover, while landlord maintained that tenant owed $22,423.21 pursuant to the stipulations, both parties ultimately agreed to the entry of a final judgment of possession and a money judgment in favor of landlord in the sum of $12,000, when no amount was due and owing and tenant had, in fact, overpaid. As landlord's misrepresentations induced tenant to enter into the stipulations in which tenant received no consideration and forfeited a valuable leasehold, we find that the stipulations should be set aside as inadvisedly entered into (see Matter of Frutiger, 29 NY2d 143; see also CPLR 5015 [a] [3]). We therefore exercise our discretion to grant the branch of tenant's motion seeking to vacate the stipulations and the final judgment entered pursuant thereto, as, under the [*4]particular circumstances presented, we cannot let stand the final judgment that is based on tenant's refusal to sign a renewal lease bearing an illegal rent.

In view of the foregoing, the branch of tenant's motion seeking to dismiss the petition should have been granted. The branch of tenant's motion seeking to be restored to possession must be determined by the Civil Court following the joinder of the new tenant in possession, if any (see CPLR 5015 [d]; Matter of Brusco v Braun, 84 NY2d 674, 682 [1994]; 467 42nd St. v Decker, 186 Misc 2d 439, 440 [App Term, 2d Dept, 2d & 11th Jud Dists 2000]; Davern Realty Corp. v Vaughn, 161 Misc 2d 550, 551 [App Term, 2d Dept, 2d & 11th Jud Dists 1994]). We do not disturb the denial of the branch of tenant's motion seeking attorney's fees, as tenant failed to introduce the lease to show that it provides for an award to landlord of attorney's fees (see Real Property Law § 234; Attia v Imoukhuede, 55 Misc 3d 135[A], 2017 NY Slip Op 50490[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2017]).

Accordingly, the order entered April 18, 2018 is modified by providing that the branch of tenant's motion seeking leave to renew her prior motion is granted and, upon renewal, the branches of the prior motion seeking to vacate the two stipulations of settlement and the final judgment are granted, upon such vacatur, the branch of the motion seeking to dismiss the petition is granted and the matter is remitted to the Civil Court for a determination of the branch of tenant's motion seeking to be restored to possession following the joinder of the new tenant in possession, if any.

ALIOTTA, J.P., and PESCE, J., concur.

ELLIOT, J., concurs in part and dissents in part, and votes to modify the order by providing that the branch of tenant's motion seeking leave to renew her prior motion is granted and, upon renewal, the branch of the prior motion seeking to vacate the two stipulations of settlement is granted only to the extent of vacating those portions thereof which obligated tenant to pay prospective use and occupancy at the rate of $3,576, in the following memorandum:

While a landlord's act of, among other things, filing false rent registrations with the Department of Housing and Community Renewal (DHCR) cannot be sanctioned by the courts, I respectfully submit that the majority stretches too far beyond the issue which has specifically been presented to both the Civil Court and now this court, in an attempt to rectify a perceived wrong. Thus, for the reasons that follow, I concur in part and dissent in part to the extent that I vote that the comprehensive and well-reasoned order of the Civil Court, entered April 18, 2018, should be modified by providing that the branch of tenant's motion seeking leave to renew her prior motion is granted and, upon renewal, the branch of the prior motion seeking to vacate the two stipulations of settlement is granted only to the extent of vacating those portions thereof which obligated tenant to pay prospective use and occupancy at the rate of $3,576; as so modified, the order should otherwise be affirmed.

This was a holdover proceeding commenced by landlord to recover possession for tenant's failure to execute a renewal lease which, apparently concededly at this juncture, contained an illegal rent. This was not a nonpayment proceeding, nor did tenant interpose a counterclaim alleging rent overcharge during the lease period. The petition, in addition to alleging that tenant continued to reside in the apartment after the lease expiration, sought to recover use and occupancy—set at $3,576 per month—for the period tenant was holding over.

Tenant, an attorney, represented by various counsel throughout this litigation, answered [*5]the petition and raised a number of affirmative defenses, including, most notably, two which asserted that the renewal lease offered by landlord listed a rent beyond the amount permissible pursuant to DHCR guidelines and, accordingly, that tenant was under no obligation to execute said lease. Instead of choosing litigation following the joinder of issue, the parties elected at that time, as was their choice to do, to settle the holdover proceeding. The first stipulation of settlement, among other things, awarded landlord past rent/use and occupancy in the amount of $12,891.03. Tenant, by different counsel, successfully amended the stipulation, which reduced the amount owed to $12,000. Tenant then enlisted new counsel and moved to vacate both stipulations on the ground that she had inadvertently waived her right to cure the failure to renew the lease. This was also the basis for her first appeal to this court. Significantly, in opposition to landlord's cross motion for sanctions, tenant explained that she had "questioned the amount of the rent in the months prior to the holdover proceeding" and, to that end, she points to requests she filed with DHCR in October 2009 and August 2010, which revealed to her that landlord was the recipient of an RPTL 421-a tax abatement but had been improperly registering the building as exempt rather than rent stabilized.

Notwithstanding tenant's knowledge of landlord's false registrations prior to her entry into the stipulations of settlement—(1) before commencement of the holdover proceeding, by virtue of her admission in opposition to landlord's cross motion that, among other things, she had requested rent registrations from DHCR prior to the commencement of the proceeding, which had revealed the apartment's regulatory status;[FN2]
 and (2) just after the commencement of the proceeding, by virtue of her having interposed defenses which made allegations of landlord's [*6]illegal rent demands—tenant now claims, and the majority renders the conclusion, that tenant's discovery in 2013 of the June 14, 2011 letter constituted newly discovered evidence of landlord's disregard of rent stabilization laws, warranting renewal and vacatur in toto. The majority reasons that both tenant's discovery as well as the letter itself postdate the Civil Court's decision denying her motion to vacate the stipulations and that the letter "was thus not discoverable at the time the [prior] motion was made." While, no doubt, tenant could not have been aware of a particular fact (the June 14, 2011 letter) which had not yet come into existence at the time, that is not the standard to be used on a renewal motion. Tenant was indeed aware that the issue of landlord's false DHCR filings existed. Despite the majority's speculative assumption as to what tenant would have done if she had the letter earlier, the letter merely represents another piece of evidence which she happened to discover later in time. The letter was "merely cumulative with respect to the factual material" already presented and of which she was aware; it does not, thus, constitute newly discovered evidence sufficient to support the majority's conclusion (Matter of Wydra v Brach, 144 AD3d 932, 933 [2016]; see Varela v Clark, 134 AD3d 925 [2015]; Matter of Orange & Rockland Util. v Assessor of Town of Haverstraw, 304 AD2d 668 [2003]).[FN3]
The majority's holding in this case would result in tenant having the benefit of labeling any information she obtained post-signing of her stipulations of settlement regarding the issue of landlord's false filings with DHCR newly discovered; she charted her own procedural course in this litigation, having settled the matter at the time and in the manner in which she did.

Neither can tenant succeed on fraud. As pointed out above, landlord commenced a holdover—not a nonpayment—proceeding. Thus, as is corollary to such a proceeding, landlord was entitled to seek use and occupancy for the period tenant was holding over. The parties were free to settle the issue of past use and occupancy owed—and admittedly not paid by tenant, as stipulated—and tenant was entitled to surrender possession (see e.g. Merwest Realty Corp. v Prager, 264 AD2d 313 [1999] [while the Rent and Rehabilitation Law is intended to protect the rights of a rent-controlled tenant, it does not prohibit a tenant from agreeing to surrender possession in resolution of a summary holdover proceeding]). Two points bear repeating. The first is that tenant had a choice to litigate the issue of whether landlord's holdover proceeding was proper; tenant chose to surrender possession. The second, somewhat related, and perhaps more [*7]significant point, is that landlord did not commence a nonpayment proceeding against tenant, nor did tenant make a counterclaim for rent overcharge from 2005 to 2009. Therefore, landlord's conduct from 2005 to 2009—upon which the majority heavily relies, particularly to justify its conclusion, to wit, that tenant "overpaid" rent or that she, "in fact," owed nothing to landlord—is irrelevant for purposes of this proceeding. The majority's calculation of what tenant's rent was versus what it should have been from 2005 to 2009 is appropriate only for the purpose of assessing what landlord would have been entitled to collect for use and occupancy during the time period that the parties' lease expired.[FN4]


To that end though, I agree with the majority opinion that it is appropriate to grant tenant's motion for leave to renew in the interest of justice, as courts may relieve parties from the consequences of a stipulation that was entered into inadvisably or where it would be inequitable to hold the parties to it; however, given the above, it must be limited in scope to the extent that only the portion of the respective stipulations setting use and occupancy at $3,576 for the period of time that the warrant of execution was stayed (i.e., prospective use and occupancy until the date the parties stipulated that she would surrender possession) must be declared void since it purports to waive tenant's right to a legal regulated rent (see RSC § 2520.13; Kings Highway Realty Corp. v Riley, 35 Misc 3d 127[A], 2017 NY Slip Op 50572[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; 716 Lefferts, LLC v Goldstock, 2001 NY Slip Op 40631[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2001]). I do not believe that the interest of justice warrants complete vacatur of the stipulations of settlement and final judgment of possession, dismissal of the petition, and consideration of the issue of restoring tenant to possession. The interest of justice will not be served particularly with respect to the latter issue, which could involve the displacement of a tenant who may have been in occupancy for years by this point.

For the aforementioned reasons, I concur in part and dissent in part.

ENTER:

Paul Kenny

Chief Clerk

Decision Date: December 20, 2019



Footnotes

Footnote 1: Pursuant to RSC § 2521.1 (g):
~~"The initial legal rent for a housing accommodation constructed pursuant to section 421-a of the Real Property Tax Law shall be the initial adjusted monthly rent charged and paid but not higher than the rent approved by HPD[.]"
~~Here, the actual rent charged and paid is lower than the HPD initial rent cap of $5,480. However, landlord had no basis for registering a legal rent of $8,000 or characterizing the initial rent paid by tenant as a "preferential rent."

Footnote 2: The majority also appears to set a precedent that landlord is required to specifically plead the apartment's regulatory status as being subject to RPTL 421-a. The cases to which the majority cites involve landlords who entirely omitted that the subject apartments were subject to any form of regulation. Conversely, landlord herein alleged the following in its petition: (1) the apartment was subject to the Rent Stabilization Law; (2) the apartment was registered with DHCR; and (3) reference was made to the notice of termination, which indicated that the reason for termination was pursuant to the Rent Stabilization Code. This is not the type of petition that would render tenant unable to determine the scope of her rights (cf. Park Props. Assoc., L.P. v Williams, 38 Misc 3d 35 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012] [cited by the majority]). In fact, the sufficiency of the petition in alleging its regulatory status is evident upon review of tenant's affirmative defenses.

Footnote 3: The majority posits that tenant was entitled to rely on the truth of the publicly available registrations which landlord was required by law to file annually with DHCR. On the contrary, "[t]he fact that a registered rent is filed with DHCR is not dispositive of whether that rent is the legal rent under the Rent Stabilization Code" (Sage Franklin LLC v Cameron, 10 Misc 3d 1069[A], 2005 NY Slip Op 52191[U], *2 [Civ Ct, Kings County 2005]). Nor did tenant, in fact, rely on those rent registrations: her answer specifically raised the issue that landlord was charging rent beyond that which was permitted by DHCR guidelines.

Footnote 4: It is worth noting that use and occupancy for January 2010 to June 2010 (the alleged holdover period), using the initial legal rent of $2,933 per month, is $17,598. The parties settled on $12,000. It would appear that the majority renders its conclusion by implicitly making a determination—without evidence in the record as to the exact amount of rent tenant paid each month from 2005 through 2009—that she overpaid during that period, and then using the speculated amount of overpayment as an offset to the amount to which landlord would have been entitled for use and occupancy post-expiration of the lease and which ultimately formed the basis for the amount included in the final judgment of possession. Though vigorously argued by tenant (and certainly not without potential merit in the proper case), there is no basis for this analysis in a simple holdover proceeding.